## Commonwealth *vs.* Donald S. Graham.

Bristol. January 4, 2000. - April 20, 2000.

Present: Marshall, C.J., Abrams, Lynch, Greaney, & Cowin, JJ.

*Practice, Criminal,* Instructions to jury, Assistance of counsel, Capital case. *Evidence,* Relevancy and materiality, Self-defense. *Constitutional Law,* Assistance of counsel. *Grand Jury.*

At a murder trial in which the jury requested a clarifying instruction on the elements of the crimes, no substantial risk of a miscarriage of justice arose from the judge's making and giving the jury a recording of his reinstructions on the substantive offenses, which emphasized the Commonwealth's burden of proof and included an instruction on self-defense, and not giving the jury a recording of the entire original instructions in which the judge had made an error. [284-287]

At the trial of an indictment for murder in the first degree in which the murder weapon was a crossbow, it was unnecessary to introduce in evidence four other crossbows, owned by the defendant and not used in the murder; any error in the admission of the evidence was not prejudicial where there was abundant evidence that the defendant was a long-time archery enthusiast. [287-289]

Asserted impairment of grand jury proceedings did not provide a basis for a claim of ineffective assistance of counsel for failure to move to dismiss the indictments on that ground, where any alleged misstatements or omissions in the presentation to the grand jury were not shown to be false or deceptive and knowingly so introduced. [289-290]

At a murder trial, defense counsel's failure to offer evidence of the victim's criminal record in support of the defendant's claim of self-defense did not provide a basis for a claim of ineffective assistance of counsel, where evidence of the victim's violent character would have been admissible only on a showing that the defendant, to whom the victim was a stranger, knew of the victim's violent nature prior to the incident. [290-291]

Indictment found and returned in the Superior Court Department on March 24, 1994.

The case was tried before *James F. McHugh, III*, J., and a motion for a new trial was heard by him.

*Dana Alan Curhan* for the defendant.

*Catherine B. Sullivan Ledwidge*, Assistant District Attorney (*John P. Letourneau*, Assistant District Attorney, with her) for the Commonwealth.

LYNCH, J. The defendant appeals from his conviction of murder in the first degree on the theory of extreme atrocity or cruelty for killing the victim with an arrow fired from a crossbow the defendant kept in the trunk of his automobile. The arrow used was designed to kill big game such as bear, elk, antelope, deer, and boar by promoting rapid bleeding.[1] The defendant through counsel raises two issues on appeal: (1) he is entitled to a new trial because the trial judge provided jurors with a recording of only a supplemental jury charge; and (2) the judge committed reversible error by admitting in evidence four crossbows, found at the defendant's house, that were unrelated to the murder. The defendant also raises an additional issue, pro se, that he was deprived of effective assistance of counsel because (a) counsel did not move to dismiss the grand jury indictment, and (b) counsel failed to offer evidence of the victim's criminal record as part of the defendant's claim of self-defense. In addition, through counsel, he also asks that we exercise our power pursuant to G. L. c. 278, § 33E, and either overturn his conviction, or reduce the verdict. We see no reason to exercise our power under G. L. c. 278, § 33E, and affirm his conviction.

1. *Facts and procedural history.* Viewing the facts in the light most favorable to the Commonwealth, *Commonwealth* v. *Coonan*, 428 Mass. 823, 824 (1999), the jury were warranted in finding the following facts. *Commonwealth* v. *Stewart*, 398 Mass. 535, 536 (1986). On February 20, 1994, the victim and his passenger were traveling from work in the southbound high-speed lane of Route 95 when a driver in a vehicle came up behind them and flashed his high beams apparently indicating that the victim should move over so the vehicle could pass.[2] The victim did not immediately pull over, so the driver continued to flash the high beams. When the victim did pull over to allow the vehicle to pass, the victim flashed his high beams back at the vehicle as it sped away.

According to the defendant's own testimony, after observing

---

[1] The arrow used had a "punch cutter" tip with a spring mechanical device on it that operated two very sharp blades. It was designed to open on impact and readily to retract its blades to fall out freely using the force of gravity. The rapid bleeding creates a blood trail for the hunter to follow. The defendant also had five or six "target arrows" in his trunk. Target arrows are not designed for hunting.

[2] This vehicle and its driver were not involved in the crime.

the victim's behavior just described, the defendant decided to give the victim "a taste of his own medicine." The defendant got behind the victim's automobile, put on his high beams, and "chase[d]" it for some fourteen miles.[3] The two automobiles changed lanes several times and, at one point, the victim hit his brakes and abruptly slowed down. Finally, the victim pulled to the side of the road and, instead of just driving on, the defendant decided to pull over also.[4]

The victim and his passenger left their automobile and walked toward the defendant's automobile. The defendant also left his automobile, removed a crossbow from his trunk, and loaded an arrow onto it. The defendant also disengaged the safety on the crossbow while the victim and the passenger were approaching. As the victim approached the defendant, he asked, "What the hell do you think you're doing?" Almost immediately, the passenger heard "an air noise," which was the sound of the crossbow being fired. The defendant gave no warning to the victim and the passenger prior to firing the crossbow.

The victim was conscious long enough to tell the passenger he was shot and to walk back toward his automobile, where he began to stagger. The passenger drove the victim to a hospital where the victim died as a result of significant blood loss and hypothermia. The arrow had entered the victim's right chest area and caused a two-inch laceration to the front wall of a major artery that runs from the heart to the armpit.

The defendant's posttrial motion for a required finding of not guilty and a new trial was denied by the judge.

2. *Tape recording of supplemental jury instructions.* The defendant argues that he is entitled to a new trial because the judge, in response to a specific question from the jury, provided the jury with a recording of only the supplemental instructions instead of a recording of the entire instructions as required by *Commonwealth* v. *Baseler*, 419 Mass. 500, 506 (1995).[5] The

---

[3]There may have been a moment in which the defendant turned off his high beams, only to turn them on again.

[4]By his own admission, the defendant had at least one opportunity to break off the encounter, but instead of doing so, chose to speed up to catch up to the victim's vehicle.

[5]In *Commonwealth* v. *Baseler*, 419 Mass. 500, 506 (1995), we summarized "the procedure a judge should follow when providing a jury with a tape recording of . . . instructions: (1) the judge must advise the counsel for both parties that the judge is going to do it; (2) the tape recording must be audible in

defendant argues that, by providing a recording of only the supplemental instructions, the judge created a risk that the jury would downplay the prosecution's burden of proof.

In denying the defendant's motion the judge[6] explained that he originally planned to submit to the jury a recording of the entire jury instruction. However, when he gave the instruction, he erred in defining involuntary manslaughter. He reinstructed the jury on involuntary manslaughter, but had second thoughts about sending the recording into the jury deliberation room because it contained both a correct and incorrect instruction on involuntary manslaughter. The jury retired for deliberation without the recording. A few hours later, the jury sent a note to the judge asking him to "explain . . . the wording of malice and forethought [*sic*], and . . . in layman's terms, all of the verdicts as we have become confused of the terms [*sic*] of all the verdicts."[7] After conferring with counsel, the judge answered the jury's question. The next day, a few minutes after resuming their deliberation, the jury sent another note to the judge stating, "Some of the jurors would like to be able to read the instructions and definitions of each verdict listed on the [verdict form]. This needs to be clear to them." As no printed copy of his original instructions was available, the judge conferred with counsel and decided to reinstruct the jury on all the substantive offenses and to make a recording of it.[8] The judge reinstructed the jury and repeatedly referred to the Commonwealth's burden to prove the elements of each charge beyond a reasonable doubt, and included instruction on self-defense. The judge then told the jurors that all instructions that were not recorded remained in full force, and said that the reason he was not reiterating all the previous instructions was

its entirety and contain the whole instruction; (3) the judge shall give instructions to the jury about how to use the tape recorded charge; and (4) the judge should have the tape recording marked for identification."

[6] The trial judge was also the motion judge.

[7] Were the jury to find the defendant guilty, they had before them murder in the first degree based on both deliberate premeditation and extreme atrocity or cruelty, murder in the second degree, and voluntary and involuntary manslaughter. They also were instructed on self-defense.

[8] The nature of defense counsel's objection to the recording is discussed *infra*.

because they had not questioned the other instructions. He also told them to feel free to ask more questions if they arose.[9]

The defendant claims that he properly raised this issue at trial. In the alternative he argues, citing *Commonwealth* v. *Vinnie*, 428 Mass. 161, 163, cert. denied, 525 U.S. 1007 (1998), and *Commonwealth* v. *Hallet*, 427 Mass. 552, 552-555 (1998), that the judge's consideration of the issue in the motion for new trial resurrected the issue for purposes of appellate review. We disagree. The issue was not properly raised at trial,[10] nor was it

[9]After reinstructing the jury about each crime, the judge said, "[B]efore I ask you to go back . . . let me say this: Obviously, nothing that I have said . . . was designed or meant or intended to indicate to you that any crime listed on that verdict slip was or was not committed; obviously, you're going to decide that, in accordance with the evidence and the instructions, and I've simply given to you, now, all of the principles that the law has and all of the principles that you need to have in order to decide that question. So, nothing that I said was designed to or should be taken by you as an indication of what any specific verdict should or should not be.

"Now, as you go back to the jury room . . . I'm going to send up this tape recorder, with the tape [of] these instructions, and you are free to use this as much or as little as you find helpful as your deliberations proceed. The fact that you have this tape recording doesn't mean that you can't continue to ask questions if questions arise, but it does mean that you have at your disposal another resource . . . .

"Remember, though, that these instructions have to be taken as a whole. It's not fair, not appropriate, to take little bits or pieces of what I've said out of context and apply them to little bits or pieces of the evidence. You have to consider the instructions as a whole and in the context of those I gave you yesterday that I didn't repeat today . . . because it did not seem to me that they were responsive to the question you asked. But they still exist and you have to consider these instructions in their context.

"As you use the tape recording, . . . [it] should be freely available to all and freely available to all to listen to as much or as little as all or each deems appropriate and advisable.

"In sum and in substance, this tape recording is a tool that you may use to assist you in understanding, comprehending and applying the instructions as a whole to the evidence as a whole, and that's what it's designed to do, no more and no less."

[10]At trial, the defendant objected to the judge's decision to send a recording of the supplemental instructions as follows: "The only objection [is] the reality . . . that if they want to re-hear one portion, they're going to have difficulty finding that particular portion on a small mini tape cassette recorder . . . [and] you run the risk of them picking out bits and pieces they want to hear." Defense counsel did not renew an objection once the judge gave his instructions to the jury. We agree with the judge that defense counsel's objection was not adequate to alert him to the requirement that the tape recordings

resurrected by the judge in denying the motion because he explicitly stated that he was not permitting "unasserted claims of error to ripen in darkness until what was once easily curable becomes immutably fixed."[11] Thus, we review the error under the substantial likelihood of a miscarriage of justice standard.[12] *Commonwealth* v. *Cruz*, 430 Mass. 182, 185 (1999).

We conclude, as did the judge, that there is no substantial likelihood of a miscarriage of justice. The jury were not reluctant to ask questions, yet never expressed confusion about the "beyond a reasonable doubt" standard. The recording submitted reiterated the Commonwealth's burden to prove each element of each offense beyond a reasonable doubt. In summarizing each charge the judge clearly placed the burden of proof on the Commonwealth. Furthermore, we note that the defendant does not argue that the instructions were incorrect.[13]

3. *Crossbow evidence.* The defendant argues that the judge committed reversible error in admitting in evidence over his objection four crossbows that were owned by the defendant but not used in the murder. At trial, five plainclothes police officers came into the court room together each bearing a crossbow armed with an arrow. In overruling the defendant's objection, the judge said that, because the officers simply walked in and

of jury instructions contain the whole instructions. *Commonwealth* v. *Baseler*, 419 Mass. 500, 506 (1995). The judge also notes that had he been so alerted he could have recorded a full instruction to the jury.

[11]The judge noted in his findings that the defendant made reference to *Commonwealth* v. *Baseler*, *supra*, for the first time in the motion for a new trial. A motion judge "has wide discretion whether to consider an issue that could have been raised at trial but was not." *Commonwealth* v. *Hallet*, 427 Mass. 552, 554-555 (1998). However, the judge should do so "only in those extraordinary cases where, upon sober reflection, it appears that a miscarriage of justice might otherwise result." *Commonwealth* v. *Harrington*, 379 Mass. 446, 449 (1980). "A motion judge's determination only that an asserted error created no such injustice would not resurrect an issue because the issue would not have been considered fully on its substantive merits." *Commonwealth* v. *Hallet*, *supra* at 555.

In this case, although the motion judge devoted much time to discussing the circumstances of the defendant's inadequate objection to the use of the recording of supplemental instructions, the discussion did not resurrect the issue because the judge did not discuss the merits. He merely considered it to see whether there was a substantial likelihood of a miscarriage of justice.

[12]We decline to consider the merits of the claim whether the requirements set out in *Commonwealth* v. *Baseler*, *supra*, were warranted in the circumstances in this case.

[13]See text of judge's supplemental instructions, *supra* at note 9.

put them down, it was not unfairly prejudicial. In addition, the judge ruled that the crossbows were relevant to the defendant's knowledge of, and familiarity with, them. "Whether evidence is relevant in any particular instance, and whether the probative value of relevant evidence is outweighed by its prejudicial effect, are questions within the sound discretion of the judge . . . [and] the judge's determination of these questions will be upheld on appeal absent palpable error." *Commonwealth* v. *Marrero,* 427 Mass. 65, 67-68 (1998), quoting *Commonwealth* v. *Valentin,* 420 Mass. 263, 270 (1995).

In *Commonwealth* v. *Toro,* 395 Mass. 354, 358 (1985), we stated that, "[t]he fact that the defendant had weapons and ammunition of any kind was arguably relevant in that it tended to show that he was acquainted with weapons and was able to use them. Cases here and elsewhere have not, however, viewed the tenuous relevancy of evidence of a person's general acquaintance with weapons as outweighing the likelihood that such evidence will have an impact on the jury unfair to the defendant." See *Commonwealth* v. *West,* 357 Mass. 245, 248 (1970), citing *Commonwealth* v. *O'Toole,* 326 Mass. 35, 39 (1950) (evidence of weapons unrelated to crime might be prejudicial; no such likelihood found); *Commonwealth* v. *Mc-Laughlin,* 352 Mass. 218, 229-230, cert. denied, 389 U.S. 916 (1967).

In this case, it was unnecessary to introduce the crossbows to demonstrate the defendant's familiarity with the weapon because there already was evidence including testimony that the defendant owned five crossbows and photographs of crossbows found in various locations in the defendant's house. However, even if it were error to admit the other crossbows in evidence, no prejudice to the defendant resulted.

"An error is nonprejudicial only ' "if we are sure that the error did not influence the jury, or had but very slight effect . . . . But if one cannot say . . . without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected." ' " *Commonwealth* v. *Flebotte,* 417 Mass. 348, 353 (1994), quoting *Commonwealth* v. *Peruzzi,* 15 Mass. App. Ct. 437, 445 (1983). In this case, there was abundant evidence that the defendant was an archery enthusiast. In addition to the testimony and photographs discussed *supra,* the defendant himself testified that he had been involved with

archery since he was thirteen years of age, that he owned five crossbows, and had a target in his backyard. Both the defendant and his wife testified that he would bring crossbows with him on camping trips. Moreover, in his opening, defense counsel said that the defendant had been involved in archery for forty-five years. In this context, we can say that the presence of the crossbows in the courtroom did not substantially sway the outcome. See *Commonwealth* v. *Flebotte, supra*; *Commonwealth* v. *Toro, supra* at 358-359 (no prejudice in erroneous admission of weapons other than murder weapon).

4. *Ineffective assistance of counsel claims.* In capital cases, we review an ineffective assistance of counsel claim under the substantial likelihood of a miscarriage of justice standard, which is more favorable to the defendant. G. L. c. 278, § 33E. See *Commonwealth* v. *Niemic*, 427 Mass. 718, 726 (1998); *Commonwealth* v. *Parker*, 420 Mass. 242, 246 & n.5 (1995), and cases cited. We look to see whether there was an error in the course of the trial and, if there was, "whether that error was likely to have influenced the jury's conclusion." *Id.*, quoting *Commonwealth* v. *Wright*, 411 Mass. 678, 682 (1992).

(a) *Alleged grand jury impairment.* The defendant argues, pro se, that the grand jury process was tainted, yet his counsel did not move to dismiss the indictment, thus depriving him of his right to effective assistance of counsel under both the Sixth Amendment to the United States Constitution and art. 12 of the Massachusetts Declaration of Rights.[14] The defendant apparently contends that the grand jury testimony of the State trooper, in which the trooper read from his report the passenger's statement about the incident, impaired the grand jury process. The defendant makes three claims of inconsistent statements on the part of the passenger contained in the trooper's report: (1) the passenger's claim that the defendant never said a word before he shot the victim; (2) the passenger's claim that he retrieved the arrow from the victim's vehicle; and (3) the passenger's claim about being able to see from the angle at which he was standing. The defendant also claims that the trooper read the passenger's claim that the victim was not a "hot head" or violent when the Commonwealth should have known that the victim had been convicted of rape of a child. In addition, he

---

[14]Because the defendant's claim is for ineffective assistance of counsel, we need not address the Commonwealth's argument that the grand jury claim was waived by failure to move to dismiss.

contends that the trooper failed to inform the grand jury that, after several hours of trying to treat the victim, the hospital ran out of blood products.

The fact that trial counsel did not move to dismiss the indictment based on these alleged errors does not create a substantial likelihood of a miscarriage of justice because the defendant has not met the showing required to demonstrate grand jury impairment. In *Commonwealth* v. *Mayfield*, 398 Mass. 615, 621 (1986), we stated that, in a claim for impairment of a grand jury, the defendant must show "that false or deceptive evidence was given to the grand jury *knowingly and for the purpose of obtaining an indictment . . . [and]* that the presentation of *the false or deceptive evidence probably influenced the grand jury's determination* to hand up an indictment" (emphasis added). Even if some inconsistencies exist in this testimony, there is nothing from which we could properly conclude that the statements were false or deceptive and knowingly introduced to the grand jury. In addition, the grand jury heard the trooper read both the defendant's own statement where he admitted shooting the victim, and the defendant's wife's statement where she stated that she did not hear any words exchanged. This evidence diminishes the impact of the trooper's testimony.[15]

Finally, the defendant's claim that the grand jury should have been told that the hospital ran out of blood products after several hours of treating the victim is without merit. There was evidence that the victim would not have survived even if more blood products were available. However, even assuming, arguendo, that more blood products would have helped the victim, actions on the part of medical personnel do not excuse the person inflicting the injuries. See *Commonwealth* v. *Williams*, 399 Mass. 60, 64 (1987), and cases cited ("a jury would not be warranted in considering evidence that the victim's wounds were negligently treated unless there also was evidence that the treatment was the only cause of the victim's death"). But see *Commonwealth* v. *Niemic*, *supra* at 727 (defense of reckless medical care permissible).

(b) *Failure to offer evidence of the victim's criminal record.*

---

[15]The defendant's claim that the trooper should have told the grand jury about the victim's violent past is discussed *infra*.

We also agree with the Commonwealth that there were no inconsistencies in who retrieved the arrow tip from the victim's automobile and whether the passenger could see from the angle at which he was standing.

The defendant also argues, pro se, that his trial counsel was ineffective in failing to offer evidence of the victim's criminal record to support the defendant's claim of self-defense.[16] Under Massachusetts law, in cases involving self-defense, evidence of a victim's violent character is only admissible if the defendant shows that he knew of the victim's violent nature prior to the incident. See P.J. Liacos, Massachusetts Evidence § 4.4.3, at 137 (7th ed. 1999). See also *Commonwealth* v. *Benjamin*, 430 Mass. 673, 678 (2000); *Commonwealth* v. *Edmonds*, 365 Mass. 496, 501 (1974); *Commonwealth* v. *Rubin*, 318 Mass. 587, 588 (1945), and cases cited; *Commonwealth* v. *Kamishlian*, 21 Mass. App. Ct. 931, 933 (1985).[17]

5. *G. L. c. 278, § 33E, claims.* We have reviewed the complete record. We find no reason to alter the verdict.

*Judgment affirmed.*

---

[16]Trial counsel, in fact, conceded that such evidence was irrelevant.

[17]The defendant argues that he should have been able to use the evidence in support of his argument that the victim was the first aggressor. In support of his argument, the defendant cites Federal law. The defendant also cites two Massachusetts cases, but they do not involve a "first aggressor" issue. See *Commonwealth* v. *Satterfield*, 373 Mass. 109 (1977); *Commonwealth* v. *White*, 28 Mass. App. Ct. 417 (1990).