# COMMONWEALTH vs. JOHN P. BROWN, JR.

Worcester. January 8, 2008. - April 17, 2008.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, CORDY, & BOTSFORD, JJ.

*Practice, Criminal,* Impeachment by prior conviction, Instructions to jury. *Evidence,* Prior conviction, Other offense, Judicial discretion. *Witness,* Impeachment. *Armed Home Invasion.*

At the trial of charges of armed home invasion and breaking and entering, the judge properly admitted in evidence, for impeachment purposes, fourteen of the defendant's prior convictions, pursuant to G. L. c. 233, § 21, where the statute did not limit the number of admissible convictions; where the convictions admitted were not substantially similar to the charged offenses; where no authority supported the proposition that two offenses, in themselves dissimilar to a charged crime, could, when combined, create such a risk of prejudice that their admission would be an abuse of discretion; and where the judge gave an appropriate limiting instruction in his final charge to the jury, reminding them of the restricted purpose for which the evidence could be used. [202-205] BOTSFORD, J., dissenting, with whom MARSHALL, C.J., and IRELAND, J., joined.

At the trial of a charge of armed home invasion, no error arose from the judge's instructions to the jury regarding the elements of that crime, which were consistent with both the text of G. L. c. 265, § 18C, and the model jury instructions. [205-206]

At the trial of charges of armed home invasion and breaking and entering, no abuse of discretion resulted from the judge's permitting the victim to answer nonverbally questions on cross-examination, where, although the better practice for a trial judge is to require all witnesses capable of providing verbal responses to do so, the victim apparently had difficulty formulating verbal responses to some of defense counsel's questions; where the jury had ample opportunity to observe the victim's demeanor, including his articulation of some of the answers; where there was no objection from defense counsel to alert the judge to any potential problem; and where the fact that the jury acquitted the defendant of certain charges suggested that they did not credit the victim's testimony, at least with respect to certain evidence. [206-208]

No substantial risk of a miscarriage of justice arose at a criminal trial from the judge's urging defense counsel to ask the defendant to clear up confusion from his nonresponsive answer upon being asked whether he had been allowed to make a telephone call while in police custody, where the defendant's answer on subsequent inquiry, that he failed to make a statement to police following his arrest, was brief and isolated, and did not create any perceptible danger that the defendant was prejudiced in any meaningful way. [208-209]

INDICTMENTS found and returned in the Superior Court Department on June 13, 2003.

The cases were tried before *Francis R. Fecteau*, J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Ellyn H. Lazar-Moore*, Assistant District Attorney, for the Commonwealth.

*Sean J. Gallagher* for the defendant.

COWIN, J. The defendant was convicted by a Superior Court jury of armed home invasion and receiving stolen property (a motor vehicle). On an indictment charging the defendant with breaking and entering in the daytime, with intent to commit a felony, the jury convicted the defendant of the lesser included offense of breaking and entering in the daytime with intent to commit a misdemeanor. That conviction was placed on file with the defendant's consent. The defendant was acquitted of armed robbery and armed assault in a dwelling. In an unpublished memorandum and order pursuant to its rule 1:28, a panel of the Appeals Court affirmed the conviction of receiving stolen property, but reversed the convictions of armed home invasion and breaking and entering, holding that the trial judge abused his discretion in allowing fourteen of the defendant's prior convictions to be admitted in evidence for impeachment purposes. *Commonwealth* v. *Brown*, 68 Mass. App. Ct. 1114 (2007). We granted the Commonwealth's application for further appellate review, and now affirm all the convictions.

*Facts.* The defendant and the victim presented sharply differing versions of the incidents in question. According to the victim, the defendant, who was an acquaintance, broke down the door of his apartment and threatened him with a knife, demanding money. The victim testified that, after he gave the defendant all the money he had, the defendant demanded more, but left the apartment after the victim's roommate appeared. He fled in a stolen automobile and was apprehended shortly thereafter.

The defendant, who admitted to being a drug addict and prostitute, testified that the victim was one of his regular customers, and that the previous night the victim had invited him to the apartment, offering to pay him for sex. The defendant went to the victim's apartment intending to execute a "hustle" whereby

he would extract more money from the victim than he would normally have been paid. He succeeded in doing so. The next morning, the defendant returned to the apartment, hoping to shower and have something to eat; the victim was angry at having been hustled and refused to speak with the defendant. The defendant left the apartment but returned when he realized he had left his cellular telephone behind. According to the defendant, the victim refused to let him in, and when the defendant pushed in the door with his shoulder, the victim and his roommate attacked him. The defendant asserted that he had no intention of assaulting or threatening the victim, but wanted only to retrieve his telephone; he said that he pulled out his knife only to defend himself, and that he fled as soon as the victim and his roommate released him.

*Discussion.* 1. *The defendant's prior convictions.* Immediately prior to the start of trial, the prosecutor presented the judge with a list of the defendant's prior convictions, seeking a ruling as to which would be admissible to impeach the defendant's credibility should he testify. The judge excluded a number of the convictions (of breaking and entering, receiving stolen property, and larceny of a motor vehicle) because of their similarity to the offenses charged. He approved the admission of fourteen prior convictions, including seven of larceny, four of malicious destruction of property, and one of resisting arrest.[1]

The Appeals Court reasoned that, while the number of convictions alone did not warrant reversal, the admission of the convictions of resisting arrest and malicious destruction of property in combination might have given the jury the impression that the defendant had a propensity for violence, and that he was the type of person who was capable of breaking down a door and forcing a person to part with his money. This, according to the Appeals Court, was an abuse of discretion that required reversal of the convictions of home invasion and breaking and entering.

We disagree. Pursuant to G. L. c. 233, 21, the prior convic-

---

[1]When the defendant testified, his own counsel questioned him about the prior convictions, evidently in an effort to blunt the impact of their introduction on cross-examination. The prosecutor did not allude to the convictions when cross-examining the defendant, although he did mention them briefly in his closing argument.

tions of a witness, including the defendant, are admissible for impeachment purposes. Prior convictions may be introduced in the discretion of the judge, who weighs the danger of unfair prejudice that might result from the admission of such evidence against its probative value for impeachment purposes. *Commonwealth* v. *Maguire*, 392 Mass. 466, 470 (1984). The admission of a large number of convictions does not by itself create a risk of prejudice sufficient to warrant reversal. See *Commonwealth* v. *Reid*, 400 Mass. 534, 539 (1987) ("We have never suggested that an abuse of discretion would arise from the admission of dissimilar prior convictions merely because they are numerous"); *Commonwealth* v. *White*, 48 Mass. App. Ct. 658, 661 (2000) (no error to admit twenty-three prior convictions for impeachment: "we are unaware of any authority imposing a numerical limit to such proof"). Indeed, we have noted that "[i]t is at least difficult, if not impossible, to show an abuse of discretion in the absence of a 'substantial similarity' between the offenses being tried and the prior convictions." *Commonwealth* v. *Drumgold*, 423 Mass. 230, 250 (1996), quoting *Commonwealth* v. *Preston*, 27 Mass. App. Ct. 16, 23 (1989).

The convictions admitted here are not substantially similar to the charged offenses in any way that we have heretofore recognized. Neither the defendant nor the Appeals Court cites any authority for the proposition that two offenses, in themselves dissimilar to a charged crime, may, when combined, create such a risk of prejudice that their admission would be an abuse of discretion. The judge here recognized his discretion and exercised it, excluding convictions of offenses that were substantially similar to the crimes charged. In addition, he gave an appropriate limiting instruction in his final charge, reminding the jury of the restricted purpose for which the evidence could be used.[2] Finally, the prosecutor's brief reference to the defendant's prior

---

[2]The judge stated:

> "[O]n this issue of the credibility of witnesses, you may have heard evidence that the defendant was previously convicted of one or more crimes. You may consider that information only for the purpose of helping you decide whether or not to believe his present testimony and how much weight, if any, to give it. You may not draw any inference of guilt against the defendant because of prior convictions. The fact that the defendant was once found guilty of other crimes does not mean that he is guilty of these charges, and you must not consider the prior

convictions in his closing argument merely reminded the jury that they should consider that evidence only for the purpose of assessing the defendant's credibility. There was no error.[3]

The defendant's prior convictions are admissible not because of a common-law rule, but by virtue of a statute, G. L. c. 233, § 21. That statute has been in existence, in one form or another, for over a century. See St. 1852, c. 312, § 60. See also *Commonwealth* v. *Hall*, 4 Allen 305, 306-307 (1862). In all that time, the Legislature has never seen fit to limit the number of convictions that may be admitted. We must therefore presume that the Legislature has considered, and rejected, the generalized policy concerns raised by the dissent.

As with the number of convictions, the Legislature has not included a limitation on the type of convictions that can be used for impeachment. The consideration of similarities between the prior convictions and the charged offense is a judicial gloss that this court has placed on the statute. See *Commonwealth* v. *Chase*, 372 Mass. 736, 749-751 (1977). We have never considered the effect of prior convictions in combination, and we decline to do so now. The use of the defendant's prior convictions is consistent with G. L. c. 233, § 21. The only way to avoid application of the statute in this case would be to conclude that the statute is unconstitutional as applied, essentially the unspoken contention of the dissent.[4] The defendant has not argued that admission of the convictions violated his constitutional rights, and we will not so conclude today. The dissent's

---

convictions to be any indication of guilt on these charges. You may consider the defendant's prior convictions solely to help you determine whether or not he is a truthful witness."

[3]Because we conclude that there is no error, we need not consider whether the defendant's objection was preserved.

[4]The dissent contends that its proposed attenuation of the statute does not arise out of constitutional considerations. *Post* at 213. Its language suggests otherwise. In referring to the application of a previous gloss attached to the statute, see *Commonwealth* v. *Chase*, 372 Mass. 736, 749-751 (1977), and subsequent cases, the dissent alludes to the "logic and fairness" that require the exercise of discretion in allowing or excluding prior convictions. These are words that invite due process considerations. The statute contains no discretionary component. What is logical and fair is for the Legislature to decide in the first instance. We may not substitute our view on the subject unless we determine that the statute as written may, facially or as applied, conflict with a defendant's constitutional rights.

policy judgments are properly a matter for the Legislature, not for this court.

The defendant raises a number of other issues on appeal. In each instance, the Appeals Court found either no error, that any error was harmless, or that no substantial risk of a miscarriage of justice existed. We address these issues in turn.

2. *Jury instruction on home invasion.* To obtain a conviction of armed home invasion, the Commonwealth must prove that the defendant (1) knowingly entered the dwelling place of another; (2) knowing or having reason to know that one or more persons were present therein, or, having entered without such knowledge, remained in the dwelling place after acquiring or having reason to have acquired such knowledge; (3) while armed with a dangerous weapon; and (4) used force or threatened the imminent use of force upon any person within such dwelling place, whether or not injury occurred, or intentionally caused injury to any person within such dwelling place. G. L. c. 265, § 18C. *Commonwealth* v. *Doucette,* 430 Mass. 461, 465-566 (1999). The statute contains no intent requirement for the first prong of the fourth element, the use or threat of force.

In instructing on the fourth element, the judge told the jury,

> "The fourth element[,] which the Commonwealth must prove beyond a reasonable doubt[,] is that the defendant used force or threatened the use of force upon any person within the dwelling place. Whether injury occurred from this use of force or threatened use of force is not relevant to your determination. An alternative is that the Commonwealth may prove beyond a reasonable doubt that the defendant intentionally caused an injury to a person within a dwelling place."

The defendant requested an instruction similar to that recommended by the Appeals Court in *Commonwealth* v. *Cowans,* 52 Mass. App. Ct. 811, 821 (2001), requiring as essential for conviction a finding of specific intent to use or threaten the use of force.[5] The judge declined to give such an instruction, and the defendant now claims that the omission was error.

In the *Cowans* case, the Appeals Court reversed a home inva-

---

[5] In *Commonwealth* v. *Cowans,* 52 Mass. App. Ct. 811, 821 (2001), the Appeals Court stated, "We note for the future that when instructing the jury on

sion conviction, holding that it was based on a faulty jury instruction. In that case, the judge instructed the jury that "[t]he mere entry of a house with a weapon in hand is sufficient to trigger the assault aspect" of home invasion. *Id.* at 817. When the jury sought reinstruction on the elements of home invasion, the judge altered the instruction somewhat, stating that, if the jury found that the defendant entered the house with a weapon, and the person within was put in fear, the fourth element was satisfied; he added that "[t]he threat may be inferred . . . when the person is in [the dwelling] with a dangerous weapon." *Id.* at 817-818.

By means of the new formulation instructing that the jury could infer a threat of force merely from the fact that the defendant was in the dwelling and was armed, the judge effectively removed the fourth element from the jury's consideration. We agree that that was error; however, we believe that the Appeals Court's suggested instruction goes too far in requiring the jury to find a specific intent to cause fear or apprehension in order to satisfy the first prong of the fourth element. The Legislature could have included a mental state requirement in the first prong; that they did so elsewhere in G. L. c. 265, § 18C ("[w]hoever knowingly enters . . . knowing or having reason to know that one or more persons are present . . . or intentionally causes any injury"), suggests that this omission is not accidental. We decline to endorse the language suggested by the Appeals Court in the *Cowans* decision. The instruction in this case was consistent with both the text of G. L. c. 265, § 18C, and the model jury instructions. See Massachusetts Superior Court Criminal Practice Jury Instructions § 2.31 (Mass. Continuing Legal Educ. 1999 & Supp. 2003). There was no error.

3. *Witness's nonverbal responses.* During cross-examination, the victim appears to have had difficulty articulating verbal responses to some of defense counsel's questions.[6] The judge

---

the elements of the home invasion statute, with regard to the threatened imminent use of force, the judge should instruct . . . that the jury must determine whether the defendant intended to cause the victim fear or apprehension of immediate harm." Since the Commonwealth did not seek further appellate review in that case, this court has not had occasion to rule on that requirement.

[6]Previously, during direct examination, the prosecutor had asked the victim, "Now, sir, when you get very nervous, do you tend to stutter?" The victim had indicated that he did.

interjected: "Occasionally the witness is not answering verbally, but he's nodding affirmatively or is shaking his head negatively, so I think that under the circumstances, . . . the court reporter can note that for purposes of the record that when she sees a nonverbal response that she can record that in the record." Defense counsel did not object, and the victim proceeded to respond to a large number of defense counsel's questions by nodding or shaking his head.

The defendant now claims that, because the judge allowed the victim to answer questions nonverbally, the jury were deprived of an opportunity adequately to assess his credibility, and that the defendant's right of confrontation was thereby violated. Because the defendant did not object, the error, if any, is reviewed for a substantial risk of a miscarriage of justice. See *Commonwealth* v. *Randolph*, 438 Mass. 290, 297 (2002).

As a general principle, a jury should be afforded the fullest possible opportunity to observe all aspects of a witness's demeanor, including both verbal and nonverbal responses, in order to make credibility determinations. See *Commonwealth* v. *Bergstrom*, 402 Mass. 534, 548 (1988). Therefore, we are in general agreement with the Appeals Court's suggestion that the better practice for a trial judge is to require all witnesses capable of providing verbal responses to do so.

Although it is not entirely clear from the record what transpired in this case, we can infer that an experienced trial judge determined that the witness was having difficulty formulating verbal responses to defense counsel's questions. While additional comment on the problem, or a hearing on the need to allow nonverbal responses, might have been preferable, we cannot say that the judge's handling of the situation constituted an abuse of discretion. The witness was on the stand for an extended period of time during both direct and cross-examination, and he gave a substantial number of verbal responses in addition to the nonverbal ones. The jury had ample opportunity to observe his demeanor, including his articulation of some of the answers. Furthermore, there was no objection from counsel to alert the judge to any potential problem.

The defendant's concern is that allowing the victim to answer nonverbally buttressed his credibility by allowing him to evade

the type of verbal communication that might have made his testimony seem less credible. However, the defendant clearly was able to use the victim's speaking difficulties to his advantage, first by eliciting from several witnesses that they had never heard him stutter before, and then by suggesting in closing argument that the victim's stuttering was either feigned or indicative of deceptiveness. That the jury then acquitted the defendant of armed robbery and armed assault in a dwelling, and convicted him of a lesser included offense on the indictment charging breaking and entering with intent to commit a felony, suggests that they did not credit the victim's testimony, at least with respect to certain evidence. There was no error.

4. *Use of the defendant's silence.* Finally, the defendant argues that the trial judge improperly forced defense counsel to comment on the defendant's failure to make a statement to the police following his arrest. On direct examination, the defendant responded to a question about whether he had been allowed to make a telephone call while in custody by saying, "I was being questioned for several hours." The answer was nonresponsive; however, neither party objected or asked the judge to strike it.

At the end of the direct examination, the prosecutor requested a sidebar conference. He expressed concern that the defendant's reply might give the jury the impression that the defendant had told the police he had acted in self-defense when in fact he had refused to answer questions or to make a statement. Urged by the judge to clear up the confusion, defense counsel then asked the defendant if he had given a statement to the police; he replied that he had not. There was no further comment on or reference to this exchange by either party or the judge.[7] The defendant now claims that the jury were permitted to infer that he was guilty based on his failure to give a statement to police.

It is, of course, axiomatic that a defendant's silence after Miranda warnings have been given may not be used to support an inference of guilt. See, e.g., *Doyle* v. *Ohio*, 426 U.S. 610,

---

[7]In his instructions to the jury, the judge noted that "[t]he fact that a person is . . . subjected to any police practices, custodial issues that some of the evidence may have shown you, none of that is evidence of guilt in this case. You are not entitled to draw any inference of guilt from any of those things." The defendant did not request, and the judge did not give, a specific instruction on the defendant's silence.

617-618 (1976); *Commonwealth* v. *Peixoto*, 430 Mass. 654, 658-659 (2000); *Commonwealth* v. *Mahdi*, 388 Mass. 679, 694-695 (1983). An exception to this rule exists where comment on the defendant's invocation of his right to silence serves to avert or alleviate jury confusion about the abrupt termination of a police interview. See *Commonwealth* v. *Martinez*, 431 Mass. 168, 183 (2000); *Commonwealth* v. *Thad T.*, 59 Mass. App. Ct. 497, 502-503 (2003). That exception does not apply here; even if it did, however, the prosecutor waived any objection by failing to assert it when the testimony about police questioning was offered, or when the defendant gave a nonresponsive answer. Cf. *Commonwealth* v. *Foster*, 411 Mass. 762, 768-769 (1992) (failure to make timely objection constitutes waiver). Moreover, the Commonwealth's concern that the defendant's comment that he was questioned for several hours would lead the jury to think that he had told police he acted in self-defense was highly speculative, and in our view, no effort at clarification was necessary.

The judge's approach, however, may have implicated the defendant's right to silence, and, to the extent it did so, it was erroneous. In any event, since the defendant did not object (indeed, defense counsel suggested the phrasing of the question that was finally asked), the question before us is whether the error created a substantial risk of a miscarriage of justice. *Commonwealth* v. *Alphas*, 430 Mass. 8, 13 (1999). We believe it did not. The statement was brief and isolated, and we see no danger that the defendant was prejudiced in any meaningful way.

*Judgments affirmed.*

BOTSFORD, J. (dissenting, with whom Marshall, C.J., and Ireland, J., join). At the defendant's trial the Commonwealth was allowed to introduce fourteen prior convictions: seven of larceny; one of resisting arrest; four of malicious destruction of property; and two of possession of a class B substance. I agree with the Appeals Court that the admission of these prior convictions was error requiring a new trial on the home invasion charge,[1] although I do not entirely agree with that court's reasoning.

---

[1] The defendant argues only that this error requires a new trial for the home

1. Contrary to the conclusion of the Appeals Court, I believe the defendant did preserve his claim of this error. Through counsel, he objected to the Commonwealth's attempt to use the prior convictions for impeachment purposes. He raised the objection immediately before the trial began, in response to the Commonwealth's motion in limine seeking to admit evidence of the convictions. The defendant first objected generally "for the obvious reasons," and then supplemented that objection with two specific points: the two convictions were too "close in time," and larceny was too similar to the charged armed robbery. The judge ruled that the Commonwealth could introduce the records of conviction of the fourteen offenses now at issue. That the defendant, following the judge's implicit overruling of his objections, chose at trial to introduce evidence of the convictions himself, in an attempt to blunt their impact on the jury, did not, in my view, constitute a waiver or abandonment of his earlier-stated objections; rather, it represented an attempt to deal strategically with the consequences of having had his objections overruled. I consider the defendant's objections, particularly the general objection "for the obvious reasons," to include at least those factors on which this court has repeatedly relied to weigh the probative value of a prior conviction against its potential prejudice. Accordingly, I conclude that the claim of error was preserved, and the defendant is entitled to a new trial unless "the [court's] conviction is sure that the error did not influence the jury, or had but very slight effect." *Commonwealth* v. *Flebotte*, 417 Mass. 348, 353 (1994), quoting *Commonwealth* v. *Peruzzi*, 15 Mass. App. Ct. 437, 445 (1983).

2. Criminal convictions of all kinds, in many circumstances, can be relevant to the credibility of the defendant-as-witness because "a defendant's earlier disregard for the law may suggest to the fact finder similar disregard for the courtroom oath." *Commonwealth* v. *Drumgold*, 423 Mass. 230, 249 (1996), quoting *Commonwealth* v. *Roucoulet*, 22 Mass. App. Ct. 603, 608 (1986). However, "[t]he admission of evidence of a prior con-

invasion conviction, for which he contends the evidence was not overwhelming. He does not seek a new trial for the breaking and entering and receiving stolen property convictions under this theory; they are excluded from my analysis.

viction, particularly a conviction of a crime not involving the defendant's truthfulness and one closely related to or identical to the crime with which the defendant is charged, may well divert the jury's attention from the question of the defendant's guilt to the question of the defendant's bad character." *Commonwealth* v. *Maguire*, 392 Mass. 466, 469 (1984). See *Commonwealth* v. *DiMarzo*, 364 Mass. 669, 679-680 (1974) (Hennessey, J., concurring) ("I believe that common sense and experience have led trial judges and trial lawyers to conclude that jurors do in fact regard the prior convictions of the defendant in many cases as proof of guilt"). Proper limiting instructions may have only limited effectiveness in preventing the inevitable prejudice that results. See *id.* at 681 (Hennessey, J., concurring). Because of the very great danger of prejudice inherent in admitting prior convictions as evidence of credibility under G. L. c. 233, § 21, we allow judges to exercise their discretion when deciding whether to allow such evidence, *Commonwealth* v. *Knight*, 392 Mass. 192, 194 (1984), and those discretionary decisions are subject to appellate review, *Commonwealth* v. *Maguire, supra* at 470.

In reviewing a trial judge's decision to admit prior convictions we determine whether there was an abuse of discretion because the danger of unfair prejudice outweighed the probative value of the evidence of a prior conviction for the purposes of impeachment. *Id.* Our cases have suggested many factors that may be considered by a trial judge in making this determination, including: whether the prior conviction is substantially similar to the crime with which the defendant is charged, *Commonwealth* v. *Drumgold*, 423 Mass. at 250; whether the prior conviction is for a crime involving truthfulness, *Commonwealth* v. *Maguire*, 392 Mass. at 469; whether the defendant had other convictions that could have been used to impeach him, *Commonwealth* v. *Whitman*, 416 Mass. 90, 95 (1993); whether the judge provided limiting instructions, *Commonwealth* v. *Walker*, 401 Mass. 338, 346 (1987); and whether the prosecutor mentioned the convictions in his closing argument, *id.*

Of the factors establishing the potential prejudice to the defendant, chief among them is whether the prior conviction bears a substantial similarity to the charged offense. "It is firmly and

wisely established in our law that no defendant should be convicted of a crime by proof of his reputation or propensity to commit similar crimes." *Commonwealth* v. *Fano*, 400 Mass. 296, 303 (1987), quoting *Commonwealth* v. *DiMarzo*, 364 Mass. at 681 (Hennessey, J., concurring). The court in the present case concludes, with no explanation, that "[t]he convictions admitted here are not substantially similar to the charged offenses in any way that we have heretofore recognized." *Ante* at 203. I believe the similarity cannot be discounted so quickly. According to the Commonwealth, the defendant crashed through the victim's door holding a large knife in his hand, demanded money, and fled after the victim handed over twenty dollars. I agree with the Appeals Court that when viewed together, the defendant's prior convictions of larceny, resisting arrest, and malicious destruction of property could have described to the jury a person who habitually steals, can be violent, and abuses the property of others. This behavior is sufficiently similar to that alleged by the Commonwealth in the present case that the potential for prejudice thereby created should be one factor in this court's review. The facts of this case may not warrant a conclusion that the decision to admit the defendant's prior convictions was erroneous based solely on their similarity to the crimes charged.[2] However, when substantial similarity is considered in conjunction with the number of convictions presented, the error becomes clear.

The court in this case simply ignores the potential for prejudice inherent in the admission of a large number of prior convictions. While the court is correct that we have never found the admission of numerous prior convictions to be an abuse of discretion, there certainly are cases that have considered their use to be problematic. See, e.g., *Commonwealth* v. *Reid*, 400 Mass. 534, 537-540 (1987) (counsel's failure to object to admission of defendant's fourteen prior convictions constituted ineffective assistance of counsel, but no reversal required because in circumstances of case, no showing that exclusion of some of same offenses would have markedly aided defendant); *Commonwealth* v. *Pierce*, 66 Mass. App. Ct. 283, 289-290 (2006) (judge appropriately excluded multiple convictions for identical

[2]To the extent that the Appeals Court based its conclusion solely on the issue of similarity of convictions, I do not agree with that court.

offenses to avoid "piling on" prior convictions); *Commonwealth*
v. *White*, 48 Mass. App. Ct. 658, 661 (2000) ("there is signifi-
cant prejudicial potential in allowing even a well-instructed jury
to learn that a defendant has a large number of prior con-
victions"). The potential for prejudice in this case was present
in both the aggregate number of convictions presented to the
jury and the number of convictions for each type of crime, es-
pecially of the similar offenses of larceny (seven convictions)
and malicious destruction of property (four). With each new
crime and each new conviction presented, the prejudice to the
defendant increased, while the probative value of successive
convictions on the issue of credibility was less and less.[3]

The court today bases its conclusion on the language in G. L.
c. 233, § 21, that allows prior convictions of all kinds, subject
only to certain time limitations, regardless of their probative
value or potential for prejudice. The court reasons that because
the Legislature has not limited the number of convictions to be
admitted under the statute, we must presume that the Legislature
has rejected the policy concerns raised by the admission of
large numbers of convictions, and that "[t]he only way to avoid
application of the statute in this case would be to conclude that
the statute is unconstitutional as applied." *Ante* at 204. Contrary
to the court's characterization of this dissent, I make no claim,
spoken or unspoken, that G. L. c. 233, § 21, is unconstitutional
as applied in this case. More generally, the court's reasoning is
not consistent with our cases on the subject. It is true that the
Legislature has never set a limit on the number of convictions
that may be admitted for impeachment purposes under § 21.
But, as the court acknowledges, it is also true that § 21 imposes

---

[3]This court has considered the availability of other, less prejudicial convic-
tions when evaluating a judge's decision to allow a prior conviction. See
*Commonwealth* v. *Whitman*, 416 Mass. 90, 95 (1993). When the only convic-
tion available is of a similar crime, the judge may have more discretion to
admit the record of that conviction. See *id.* See also *Commonwealth* v. *Chartier*,
43 Mass. App. Ct. 758, 763 (1997). By the same token, a judge should exclude
evidence of more prejudicial similar convictions when less similar convictions
are available for impeachment purposes. See *Commonwealth* v. *Whitman*,
*supra.* There were clearly less prejudicial options available for impeaching the
defendant in this case that would have provided nearly identical probative
value. The simplest alternative would have been for the judge to have excluded
multiple convictions for the same crime.

no limitation on the use of convictions that are substantively similar to the charged offense, and yet this court has long encouraged trial judges to consider the potential for prejudice that the use of such convictions may have. Over thirty years ago, in *Commonwealth* v. *Chase*, 372 Mass. 736, 749-750 (1977), this court held that "[a]lthough . . . the statute does not give the judge any discretion to exclude the evidence when the prosecutor in his discretion offers it, we would not deny the right of a judge to avoid any question of unfairness by excluding such evidence in a situation where the likely prejudice to the defendant is most intense." After *Chase*, our cases have held that, the language of the statute notwithstanding, logic and fairness require a judge to exercise discretion in allowing or excluding prior convictions, a discretion that is subject to judicial review. See, e.g., *Commonwealth* v. *Maguire*, 392 Mass. at 470.[4] My dissent in this case simply applies these established principles.

The defendant's credibility was a central issue at trial and the defendant acknowledged in his testimony that he was willing to lie in order to obtain money for drugs. Once the defendant impeached his own credibility by his testimony, the importance to the Commonwealth of impeachment through prior convictions decreased. Moreover, the probative value of each conviction was undermined by the total number of convictions. While the first few convictions might have cast doubt on the defendant's credibility, the thirteenth and fourteenth could have been of only minimal aid to the jury on the only proper issue of impeachment. This is particularly true for multiple convictions of the same offense: the jury can hardly be aided in their credibility determination by three or four convictions of an identical crime. In this case the jury was presented with seven prior convictions of larceny. It is difficult to imagine that the jury would continue to see this evidence as implicating only the issue of credibility, and not as proving the defendant's bad character as a person with a propensity to commit crimes and, in particular, to steal.[5]

---

[4] I note that since *Commonwealth* v. *Chase*, 372 Mass. 736 (1977), and cases that have followed it, the Legislature has not seen fit to amend G. L. c. 233, § 21, in any manner that would signal legislative disapproval of the "judicial gloss" (*ante* at 204) added to that statute.

[5] The Commonwealth argues that by acquitting the defendant of the charged

In sum, I conclude that the admission of evidence concerning the defendant's fourteen prior convictions, including the multiple convictions of offenses that collectively bore a distinct similarity to the charges in this case, was error. As the Appeals Court, in my judgment, correctly observed, "the propensity inference springing from the convictions may well have diverted the jury from their responsibility of assessing whether the defendant committed the charged crimes, and converted the trial to an assessment of the defendant's bad character." Because the error was preserved, and because I "cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error," I also "cannot say that the judge's error . . . was not prejudicial" (quotation and citation omitted). *Commonwealth* v. *Flebotte*, 417 Mass. at 353. I respectfully dissent.

---

crimes of armed assault in a dwelling and armed robbery, the jury demonstrated that in certain critical respects they credited the defendant's testimony over that of the victim, and therefore the defendant has no basis to argue that he suffered a substantial risk of a miscarriage of justice on account of the evidence concerning his fourteen prior convictions. The argument is beside the point. The unfair prejudice to the defendant from admission of evidence concerning his fourteen prior convictions did not come from the fact that the convictions might have caused the jury to disbelieve him — in fact, that is the one point on which they were probative. Rather, the prejudice that is of concern relates to the jury's possible use of these multiple, similar convictions as evidence that the defendant was a bad man or in any event a career criminal who probably committed the crimes charged.