COMMONWEALTH *vs.* BRIAN SMITH.

No. 08-P-844.

Suffolk. May 6, 2009. - September 4, 2009.

Present: GRASSO, COHEN, & FECTEAU, JJ.

Further appellate review granted, 456 Mass. 1101 (2010).

*Armed Home Invasion. Practice, Criminal,* Instructions to jury. *Burglary. Armed Assault with Intent to Murder. Unlawful Possession of a Firearm. Words,* "Entry."

There was no merit to a criminal defendant's argument that the Commonwealth failed to prove the scienter element of home invasion [198-200], that the judge improperly instructed the jury with respect to that element [200], or that there was insufficient proof that an entry had occurred [200].

At a criminal trial, the judge did not err in instructing the jury on armed assault with intent to murder [200-201], nor were the defendant's convictions of armed assault with intent to murder and armed home invasion duplicative, where they were based on the same conduct [201].

The evidence at a criminal trial provided sufficient support for the judge to deny the defendant's motion for a required finding of not guilty on a charge of unlawful possession of a firearm [201], and the burden of proof on the issue of the defendant's authorization to carry a firearm did not unconstitutionally shift to the defendant [201-202].

No substantial risk of a miscarriage of justice arose at a criminal trial when the judge did not provide to the jury a recording of his supplemental instructions. [202]

At a criminal trial, the judge correctly instructed the jury on joint venturer liability. [202]

INDICTMENTS found and returned in the Superior Court Department on May 3, 2005.

The cases were tried before *Thomas E. Connolly,* J.

*Jonathan P. Harwell* for the defendant.

*Joseph M. Ditkoff,* Assistant District Attorney (*Cory S. Flashner,* Assistant District Attorney, with him) for the Commonwealth.

FECTEAU, J. The defendant appeals from his convictions by a Superior Court jury of armed home invasion, G. L. c. 265, § 18C; armed assault with intent to murder, G. L. c. 265, § 18(*b*); and

unlawful possession of a firearm, G. L. c. 269, § 10(*a*). He complains of numerous errors involving the sufficiency of evidence and jury instructions with respect to each offense. We affirm.

1. *Background.* On the evening of March 13, 2005, the victim, Kenneth Lowe, and his girlfriend, Nikki Semnack, were in an apartment at 98 Walford Way in the Charlestown section of Boston. Lowe spent much of the evening ingesting "crack" cocaine, but ran out of drugs between 8:00 P.M. and 10:00 P.M. Around 11:30 P.M., Lowe heard a knock at the door as he was getting ready for bed. He saw the defendant through the peephole and opened the door all the way, inward.

Lowe and the defendant had been friends for approximately eight months and saw each other about four times per week. They usually smoked crack cocaine together. Although Lowe was not in business as a crack cocaine supplier, he would routinely acquire the drug for other people, including the defendant, in exchange for a share of the drugs. When the defendant visited Lowe for crack cocaine he would frequently bring other people with him, and Lowe was happy to act as a runner for their crack purchases as well.

After Lowe opened the door, the defendant told Lowe that a friend was downstairs and wanted Lowe to "take him up the street." Lowe declined, noting the late hour. At that point, a white man, wearing a "hoodie" with a bandana covering his face, ran up the stairs. He was holding a large, silver gun, the barrel of which was no longer than twelve inches.

Lowe immediately tried to close the door, but the defendant placed his foot in the doorway, leaving a two- to three-inch gap. Lowe observed the masked man reach over the defendant and insert the gun into the apartment through the gap in the door. The masked man either said, "You mother f[-]cker" or, "get the mother f[-]cker." The defendant mumbled something and then both he and the masked man pushed on the door to open it. Lowe was able to keep the door from opening further.

The masked man then pulled the gun out of the door crack and as he did so, the gun went off, but the shot did not enter the apartment. Lowe tried to slam the door shut, but was unable to close it because the security chain was caught between the door and the frame. Lowe then heard the defendant say, "what the

f[-]ck you doing man." He heard them have a brief discussion and then they started pushing on the door again. As Lowe started to tire, they managed to open the door enough to insert the gun between the door and the frame. The gunman was trying to angle the gun toward Lowe's head.

At this point, the gun fired and the bullet hit a picture on the wall. Lowe managed to close the door on the gun, the gun was withdrawn, and Lowe was able to close and lock the door. He then heard one person leave the building and then another. Lowe called the police.

The police responded and found a spent shell casing on the landing outside the door. They observed damage in the picture on the wall, and discovered a spent nine millimeter bullet below the radiator. They also observed a dent in the door jamb about one-half way up. The casing and bullet were consistent with each other.

2. *Home invasion.* The indictment stated that "on March 13, 2005, [the defendant] did knowingly enter the dwelling place of one Kenneth Lowe, in Boston, and remained in such dwelling place knowing or having reason to know that one or more persons were present within while armed with a dangerous weapon, to wit: a firearm, and used force and threatened the imminent use of force upon Kenneth Lowe within such dwelling place."

The defendant's arguments mainly stem from a premise that there are two separate ways to prove the crime of home invasion: (1) that a perpetrator enters a dwelling knowing that someone is inside and then assaults that person, or (2) that the perpetrator enters a dwelling not knowing whether anyone is inside but, after acquiring knowledge, remains and commits an assault. The defendant contends that there was insufficient evidence of his guilt because the indictment only charged one of the two alternative ways of proving the crime, specifically, that the defendant entered the dwelling without knowledge of anyone inside. Therefore, he argues that the Commonwealth could only prove home invasion by showing that the defendant had no knowledge of occupants in the dwelling, and that the judge misinstructed the jury. We disagree.

First, we disagree that there are two alternative methods to prove home invasion. "To obtain a conviction of [the crime], the Commonwealth must prove that the defendant (1) knowingly

entered the dwelling place of another; (2) knowing or having reason to know that one or more persons are present therein, or, having entered without such knowledge, remained in the dwelling place after acquiring or having reason to have acquired such knowledge; (3) while armed with a dangerous weapon; and (4) used force or threatened the imminent use of force upon any person within such dwelling place, whether or not injury occurred, or intentionally caused injury to any person within such dwelling place. G. L. c. 265, § 18C." *Commonwealth* v. *Brown,* 451 Mass. 200, 205 (2008), citing *Commonwealth* v. *Doucette,* 430 Mass. 461, 465-466 (1999).[1] Rather than setting out two separate offenses, as the defendant suggests, the statute has been described as one offense containing an element with alternative scienter clauses. *Commonwealth* v. *Ruiz,* 426 Mass. 391, 392-393 (1998). The defendant relies on language from *Ruiz* to show that there are two alternative ways to prove home invasion; however, *Ruiz* does not support such a proposition. In *Ruiz,* the Supreme Judicial Court held that the statute applied to a perpetrator who was armed before entering a dwelling regardless of whether the perpetrator had knowledge of occupants in the dwelling. In other words, "a plain reading of § 18C suggests that . . . a defendant must be armed at the moment of entry does nothing to diminish the significance of these two alternate scienter clauses." *Id.* at 393. Moreover, no other cases that deal with home invasion suggest what the defendant proposes. See *Commonwealth* v. *Pagan,* 440 Mass. 84, 93 (2003); *Commonwealth* v. *Stokes,* 440 Mass. 741, 746-747 (2004); *Brown, supra.*

The indictment did not exclude one of the scienter elements; rather, it can be read as having merged the two into one without affecting what the Commonwealth needed to prove; namely, that prior to assaulting the occupant, the defendant knew or

---

[1]General Laws c. 265, § 18C, as amended through St. 2004, c. 150, § 17, states: "Whoever knowingly enters the dwelling place of another knowing or having reason to know that one or more persons are present within or knowingly enters the dwelling place of another and remains in such dwelling place knowing or having reason to know that one or more persons are present within while armed with a dangerous weapon, uses force or threatens the imminent use of force upon any person within such dwelling place whether or not injury occurs, or intentionally causes any injury to any person within such dwelling place shall be punished by imprisonment in the state prison for life or for any term of not less than twenty years."

should have known of the occupant's presence. Second, unlike in *Ruiz*, where the perpetrator must be "armed with a dangerous weapon" before entering the dwelling, the timing of the scienter element is not critical as long as the perpetrator knows or should have known of an occupant prior to assaulting him or her. *Ruiz*, *supra* at 393.

The defendant next contends that the judge improperly instructed the jury on these two alternative scienter clauses. He argues that since the indictment only charged him with entering without knowledge, the judge constructively amended the indictment by including both in his instructions. However, the judge did not err, as the indictment can fairly be read to allege that the defendant entered and remained while knowing that a person occupied the dwelling, not that the defendant entered without knowledge.

The defendant next complains that there was insufficient evidence proving that there was an entry when only the firearm crossed the plane of the threshold. Although "entry" is not defined in § 18C, our courts have used the burglary statute to help define the term. *Commonwealth* v. *Stokes*, *supra* at 746-749. "The home invasion statute and the burglary statutes all seek to protect the home. The unlawful entry in the one case is as destructive of that sanctity as in the other. Thus, the meaning of the word 'entry' in the burglary statutes applies here as well and we conclude that an entry for purposes of the home invasion statute occurs when there is 'any intrusion into a protected enclosure by any part of a defendant's body.' " *Id.* at 748, quoting from *Commonwealth* v. *Burke*, 392 Mass. 688, 690 (1984). With respect to the burglary statutes, we have said that "entry occurs when any part of the defendant's body, or an instrument which is used to commit the intended felony, crosses the threshold." *Commonwealth* v. *Cotto*, 52 Mass. App. Ct. 225, 229 (2001). Lowe testified that the defendant placed his foot in the doorway to the apartment, preventing Lowe from closing the door. Therefore, the Commonwealth provided sufficient evidence that the defendant entered the dwelling first, when his foot crossed the threshold of the door, and second, when the gun was inserted into the apartment.

3. *Armed assault with intent to murder.* The defendant contends, without adequate argument, that the judge misinstructed

the jury because during his instruction on armed assault with intent to murder, he omitted the definition of a dangerous weapon. However, there was no error because he had already defined it in the previous instruction of home invasion. Moreover, the jury were given the judge's oral and written itemization of all required elements of the offense when he introduced his instructions on this offense.

The defendant also alleges, without appropriate argument or authority, that the convictions of armed home invasion and armed assault with intent to murder were based on the same conduct and, therefore, duplicative. The two charges are legally distinct, as each has an element that the other does not: the offense of armed home invasion does not require an intent to commit murder and armed assault with intent to commit murder does not require entry into a dwelling or knowledge of occupation. See *Commonwealth* v. *Lopez*, 383 Mass. 497, 500 (1981); *Commonwealth* v. *Brown*, 451 Mass. at 205.

4. *Unlawful possession of a firearm.* On appeal, the defendant contends that the charge of unlawful possession of a firearm should not have gone to the jury because there was insufficient evidence to establish the barrel length of the gun. *Commonwealth* v. *Latimore*, 378 Mass. 671, 677 (1979). However, even without the actual measurement from the gun, the victim described the gun as eleven or twelve inches in length and compared it with an eleven-inch piece of paper. This evidence provided sufficient support for the judge to deny the defendant's motion for a required finding of not guilty.

The defendant also argues that the Commonwealth unfairly shifted the burden by requiring him to prove his codefendant had a firearm license. This claim is without merit. "We have held that . . . the Commonwealth does not need to present evidence to show that the defendant did not have a license or firearm identification card because 'the burden is on the defendant to come forward with such evidence.' " *Commonwealth* v. *Colon*, 449 Mass. 207, 226 (2007), quoting from *Commonwealth* v. *Tuitt*, 393 Mass. 801, 810 (1985). Further, we have held "that the presumption that the defendant is not authorized to carry a firearm is constitutional" and it is not "the Commonwealth's burden to prove lack of license or a firearm card." *Ibid.*, quoting

from and citing *Commonwealth* v. *Jones*, 372 Mass. 403, 404, 406-409 (1977). Therefore, the burden of proof did not unconstitutionally shift to the defendant.

5. *Jury instructions.* The defendant makes two final arguments regarding the jury instructions. First, he contends the judge committed error by providing the jury a complete audio recording of his jury instructions but not of the supplemental instructions. See *Commonwealth* v. *Baseler*, 419 Mass. 500, 505-506 (1995). There was no substantial risk of miscarriage of justice when the judge did not record the supplemental instructions. See *Commonwealth* v. *Graham*, 431 Mass. 282, 284-285 (2000) (no error when judge gave jury a tape of only the supplemental instructions). Here, the judge clarified the term "entry" for the home invasion charge, specifying that a defendant entered if the weapon he carried crossed the threshold. He also reiterated to the jury that to find the defendant not guilty on a theory of joint venture, they must find him not guilty of all three crimes. The supplemental instructions did not alter the burden of proof or confuse the jury about the "beyond a reasonable doubt" standard. *Id.* at 286-287.

Finally, the defendant argues that the judge misinstructed the jury about joint venturer liability, contending that the judge instructed on both joint venture and principal liability. This argument has no merit, as the judge correctly instructed the jury on joint venturer liability.[2] There was no error.

*Judgments affirmed.*

---

[2]In his instructions regarding joint venture liability, the trial judge stated that the Commonwealth must prove that the defendant had "knowledge that another person intended to commit the crime and shared the intent himself" to commit the crime, and that the defendant "aided or assisted the commission of the crime, or that by agreement he was willing and able to assist the other person by carrying out the crime if necessary." The Supreme Judicial Court's recent opinion in *Commonwealth* v. *Zanetti*, 454 Mass. 449 (2009), does not alter our conclusion.