## COMMONWEALTH *vs.* TOMMY LEE REED.

Hampden.  November 10, 1986. — December 30, 1986.

Present: GREANEY, C.J., QUIRICO, & KASS, JJ.

*Search and Seizure,* Threshold police inquiry. *Constitutional Law,* Search
and seizure. *Evidence,* Business record, Information stored on computer.

An anonymous informant's tip, broadcast on the police radio, that three black
men in a red van had been seen stealing hubcaps from cars in a shopping
mall parking lot, was sufficiently corroborated by a second broadcast
of an investigating officer that hubcaps were missing from cars in the
lot and by two police officers' observations shortly thereafter, as they
drove to the lot, of a red van through the open sliding side door of which
could be seen several black men and some hubcaps, so as to give the
officers reasonable grounds for a stop of the van and preliminary inquiry
of its occupants. [295-297]

Probable cause existed to seize, as likely to have been stolen, items in a van
(hubcaps and clothing with price tags affixed) that were in plain view
through its open side door, when, upon police officers' stopping the
vehicle with probable cause to make inquiry of its occupants, the pass-
engers suddenly jumped out of the van and fled. [297-298]

At the trial of a complaint charging the defendant with having received
various items of clothing stolen from a department store, information
contained in a computer printout sheet listing the store's inventory of
merchandise, which the store had compiled on its computer in the regular
course of business and from which the store's operations manager tes-
tified at trial, was admissible for the truth of its contents as a business
record under G. L. c. 233, § 78. [298-300]

COMPLAINT received and sworn to in the Springfield Division
of the District Court Department on July 5, 1985.

The case was heard by *Allan McGuane,* J.

*William R. Hill, Jr.,* Committee for Public Counsel Services,
for the defendant.

*Ariane D. Vuono,* Assistant District Attorney, for the Com-
monwealth.

GREANEY, C.J. A complaint was issued against the defendant
for receiving stolen property having a value of over $100 (vari-

ous items of clothing from a J.C. Penney Store in Springfield). The defendant waived his right to a jury trial and was tried and found guilty by a judge of a District Court. On appeal, the defendant argues error in (1) the denial of his motion to suppress evidence seized from a motor vehicle and (2) in the admission of hearsay evidence.

1. The judge did not make findings of fact on the motion to suppress, as he should have. This oversight unnecessarily complicates appellate review. See *Commonwealth* v. *Gaulden,* 383 Mass. 543, 547 (1981); *Commonwealth* v. *O'Connor,* 21 Mass. App. Ct. 404, 405 (1986). Remand for findings is unnecessary, however, because the judge's denial of the motion imports his acceptance of the testimony of the three Springfield police officers who appeared as the only witnesses at the hearing on the motion. Their testimony discloses the following.

Shortly before 2:00 P.M. on July 3, 1985, the Springfield police department received information by telephone that three black men in a red van had been seen stealing hubcaps from cars in a shopping mall parking lot. A police officer was dispatched by radio to investigate. When the officer arrived, he could find neither the red van nor a complainant. He did observe, however, that three or four cars of the approximately two hundred then in the parking lot were missing hubcaps on the passenger side tires. The officer reported this information over his radio and returned to routine patrol.

Two Springfield detectives, in an unmarked car, had heard the first radio call and had started to drive towards the shopping mall. Just after they heard the second broadcast, they saw a red van. The police were driving south on Tapley Street in Springfield towards the intersection of Tapley and Bay streets. The van was proceeding west on Bay Street and crossed Tapley Street directly in front of the detectives' car. The passenger side of the van faced the police car.

One of the detectives inside the police car testified that a sliding door on the passenger side of the van was open, allowing both officers to see inside. That was a plausible circumstance, as the day was very hot. Through the open van door the officers observed several black men, as well as hubcaps and clothing

with price tags attached. Based on those observations, the officers decided to stop the van. They turned right onto Bay Street, activated their siren and flashed their headlights, pulled around the van and turned in front of it, forcing it to stop. At about the same time, another unmarked police car, which had also seen the van, pulled behind it, boxing it in. At least one of the detectives from the lead police car got out and approached the van. He asked the driver, later identified as the defendant, for "some paperwork." While the defendant was "fumbling around" to satisfy this request, the passengers in the back of the van suddenly jumped out and ran. The officer gave chase. A policeman from the other car approached the van. As he did, he also saw the hubcaps and the clothes with price tags through the open door of the van. The defendant was placed under arrest and the hubcaps and clothes were seized.

The defendant concedes (as he must) that the principles stated in *Terry* v. *Ohio,* 392 U.S. 1 (1968), allow the stopping of a motor vehicle and preliminary inquiry of its occupants if there exists reasonable grounds for inquiry. *Commonwealth* v. *Riggins,* 366 Mass. 81, 86 (1974), and cases cited. He argues, however, that the police lacked a reasonable factual basis to stop the red van. Relying on *Commonwealth* v. *Antobenedetto,* 366 Mass. 51 (1974), he claims that the lack of corroborative information to support the reliability of the anonymous tip renders the stop of the van and the seizure of property from it unconstitutional.

The argument misconceives the holding of the *Antobenedetto* decision, as well as the precise sequence of events in this case. The officers here were clearly "able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant[ed]" the stop. See *Terry* v. *Ohio,* 392 U.S. at 21. We need not decide whether the anonymous report could alone justify the stop. See, e.g., *Aguilar* v. *Texas,* 378 U.S. 108, 113 (1964); *Spinelli* v. *United States,* 393 U.S. 410, 416 (1969); *Commonwealth* v. *Antobenedetto,* 366 Mass. at 56. However, when considered with the evidence from the investigating officer which tended to corroborate the report, the close resemblance of the van and

its occupants to the descriptions in that report, and, most important, the hubcaps in the back of the van open fully to view by passersby, including the police, the facts " 'warrant[ed] a man of reasonable caution in the belief' that the action taken was appropriate." *Terry* v. *Ohio,* 392 U.S. at 22. "The officers did not act on unsupported intuition or hunch, which would have been insufficient justification to stop the vehicle. . . . Rather, they acted on concrete facts which supported the reasonable inference that the red [van] might be the vehicle involved in the [theft]. There was thus a proper basis in a constitutional, as well as a practical, sense for stopping the vehicle in order to conduct an inquiry. *Commonwealth* v. *Breen,* 357 Mass. 441, 446 (1970). *Commonwealth* v. *Wilson,* 360 Mass. 557, 560 (1971)." *Commonwealth* v. *Riggins,* 366 Mass. at 87.

While the police were making preliminary inquiry of the defendant, the passengers in the van suddenly jumped out and fled. This added fact certainly gave rise to probable cause to examine the van for possible stolen merchandise. Thus, the presence of concrete facts corroborating the anonymous information, and the observation of likely stolen property in plain view prior to the stop of the vehicle, distinguish this case from the *Antobenedetto* decision, and the more recent decision in *Commonwealth* v. *Bottari,* 395 Mass. 777 (1985), in which police action was invalidated. In the latter cases, anonymous information had not been adequately verified prior to the making of an actual arrest, or a search or seizure of property. The probable cause necessary for an arrest, search, or seizure was thus absent. Here, there was a reasonable basis, under *Terry* principles, to stop the van for initial inquiry. The boxing-in of the van with the police cruisers did not by itself constitute an arrest. See *Commonwealth* v. *Fitzgibbons, post* 301, 302 (1986), decided the same day as this case. The over-all intrusion was dictated by, and consistent with, the circumstances. Compare *Commonwealth* v. *Sanderson,* 398 Mass. 761, 766-767 (1986). If probable cause did not already exist prior to the stop (as it most likely did), the flight of the passengers and the closer plain view observations of the van's contents shortly

after the stop gave the police probable cause to seize the hubcaps and articles of clothing. The motion to suppress was correctly denied.

2. The prosecutor called as a witness at trial the operations manager of the J.C. Penney store to which the clothing (five pairs of red and white shorts and pants) belonged. Relying upon a computer printout, the manager testified that the store had received six pairs of this style of shorts and pants eighty-two days before July 5 (the day he was asked to check the merchandise to see if it had been stolen) and that none had been sold. A physical inventory of that part of the store where this type of merchandise was kept disclosed one pair remaining on the sales floor and five pairs unaccounted for. As previously indicated, the clothing contained J.C. Penney price tags and other identifying store information.

The defendant argues that allowing the manager to use the printout, an out-of-court document presented for the truth of its contents, constituted the use of inadmissible hearsay. The printout itself was not admitted in evidence. Although the printout was hearsay and not a record made by the manager reflecting matters of his personal knowledge, we think the information in the printout qualified as a business record.[1]

A record is admissible as a business record if it "was made in good faith in the regular course of business and before the beginning of the civil or criminal proceeding . . . and [if] it was the regular course of such business to make such memorandum or record at the time of such act . . . or within a reasonable time thereafter." G. L. c. 233, § 78, as appearing in St. 1954, c. 442, § 1. The manager's testimony established the existence of all four factors.[2] The record involved entries made into

---

[1] It is not significant that the trial judge may not have considered the printout a business record if the information on it is otherwise admissible as such. We think this is a case in which the judge's ruling can be sustained if it is correct for any reason, even if the reason was not one advanced before the judge. The foundation requirements are clearly present in the manager's testimony.

[2] "The fact that the computer printout introduced in evidence was produced from the stored electromagnetic records at a time after 'the beginning of

inventory when goods were received, and then reports made of sales, with corresponding debits from inventory. The fact that these records were kept on a computer rather than in ledgers does not make the information reported less reliable.

The defendant argues that reliance on the report and the manager's lack of knowledge about the operation of the computer system deprived him of meaningful cross-examination. General Laws c. 233, § 78, does not require personal knowledge by the witness of the facts in a business record as a condition of admissibility. See *Sawyer & Co.* v. *Southern Pac. Co.,* 354 Mass. 481, 484 (1968). The fact that the manager was unaware of how the system worked is also irrelevant to admissibility, although that point could pertain to the weight to be given the evidence by the fact finder. See *Commonwealth* v. *Hogan,* 7 Mass. App. Ct. at 251. See also *Commonwealth* v. *Baker,* 368 Mass. 58, 84 (1975). The manager knew and supervised the reporting system on which the printout was based. The reliability of the system could be inferred from the reliance placed on it by the store in the regular course of business. See *United States* v. *DeGeorgia,* 420 F.2d 889, 893 n.11 (9th Cir. 1969); *Commonwealth* v. *Hogan,* 7 Mass. App. Ct. at 251 n.15.

We note also that the defendant's trial counsel cross-examined extensively on possible inaccuracies in the information contained in the printout, drawing out facts to be evaluated on the issue of the weight to be given the evidence. She perhaps could have probed more deeply on the printout's foundation (asking, for example, about what type of information was included in the printout, how reliable similar printouts had been in the past, and what specific procedures had been used to gather and tabulate the information). Her decision not to do

---

the . . . criminal proceeding' does not affect the admissibility of the printout. The electromagnetic record itself was stored in the regular course of business long before this proceeding began; and the translation of the computer language . . . to a form usable by the court does not make the printout inadmissible." *Commonwealth* v. *Hogan,* 7 Mass. App. Ct. 236, 252, *S.C.,* 379 Mass. 190 (1979).

so appears to have been a tactical choice. In any event, we conclude that the information qualified as a business record and that the defects argued on appeal went to weight.

*Judgment affirmed.*