COMMONWEALTH *vs.* DARRIN WHITMAN.

Middlesex. April 6, 1993. - August 11, 1993.

Present: LIACOS, C.J., WILKINS, LYNCH, O'CONNOR, & GREANEY, JJ.

*Homicide. Evidence*, Prior conviction.

In the circumstances of a first degree murder trial in which, although there was evidence of a sexual attack on the victim, the prosecution proceeded solely on the theory of deliberate premeditation, the judge did not abuse his discretion in admitting, for impeachment purposes, the defendant's record of a conviction of assault with intent to commit rape. [92-95]

A defendant convicted of first degree murder in the brutal slaying of a seventy-six year old woman presented no occasion for this court to exercise its power under G. L. c. 278, § 33E, to reduce his conviction to murder in the second degree. [95-96]

INDICTMENT found and returned in the Superior Court Department on July 26, 1990.

The case was tried before *Robert A. Barton*, J.

*James L. Sultan* (*Margaret H. Carter* with him) for the defendant.

*Rosemary D. Mellor*, Assistant District Attorney, for the Commonwealth.

O'CONNOR, J. A jury found the defendant guilty of murder in the first degree. On appeal, the defendant argues that the trial judge erred by admitting in evidence for impeachment purposes the defendant's record of a conviction of assault with intent to commit rape. In addition, the defendant urges us to reduce the verdict to murder in the second degree pursuant to G. L. c. 278, § 33E (1992 ed.). We conclude that the judge did not err and that we should not reduce the verdict.

The Commonwealth's version of the relevant events, as disclosed by the Commonwealth's witnesses, is substantially as follows. Bernice Clark was a seventy-six year old woman living in Woburn. On the evening of July 13, 1990, her grandson found her dead body in the bedroom of her home. The body was clad only in a girdle. Nylon stockings were tied around the victim's left wrist and head. An afghan was draped across her midsection, and her housedress, slip, and slippers were on the floor next to the bed. Petroleum jelly was smeared on the victim's buttocks and around her anus and genitals. She had been stabbed twice on the left side of her chest and twice near her shoulders. The stab wounds on the chest were the cause of death.

According to the Commonwealth's evidence, blood was found in numerous places in the victim's home, some of which was consistent with the victim's blood type and some of which was not. The defendant could not be excluded as the source of the blood that was inconsistent with the victim's blood type. The defendant's fingerprints were found in various places in the home. A print found on the jar of petroleum jelly next to the bed belonged to the defendant. The bathroom wastebasket contained the handpiece of the kitchen telephone, and the handpiece of the bedroom telephone was on the living room couch. There was a cigarette in an ashtray in the living room although the victim, who lived alone, did not smoke.

The Commonwealth's evidence disclosed that the defendant was working in the area of the victim's home as a door to door magazine salesman the day in question. Many of the victim's neighbors testified that the defendant had come to their homes to sell them magazines. Most of the neighbors testified that the defendant was wearing a white shirt and dark pants. At least one witness testified that, when the defendant approached him shortly after the time established as the time of the murder, the defendant was wearing tannish gray pants with stripes on the sides. The defendant's supervisor testified that, on the day of the murder, the defendant

was wearing "a black pair of baggy pants over a beige pair of pants."

The defendant testified that he went to the victim's home in the afternoon of the day she was killed. The victim invited him inside and eventually bought a subscription. While the defendant was in the home, he talked with the victim for a while and he smoked a cigarette. He left the home around 4 P.M. Later in the afternoon, the defendant testified, a large black dog bit him as he was canvassing the neighborhood and he "was cut on his thumb." He returned to the victim's home because "she was a nice lady, and he had felt comfortable with her." He knocked on the door but no one answered, so he let himself in and washed his thumb in the kitchen sink. He then heard a gurgling sound coming from the bedroom and he went there and saw the victim on the bed with stab wounds. The telephone rang at that moment. He picked up the telephone, immediately hung it up, and disconnected the handpiece.

According to the defendant's testimony, after seeing the victim, he washed his thumb again in the bathroom, wrapped a tissue around it, washed it again in the kitchen, and put another tissue on it. He then left the home and resumed selling magazines. The defendant further testified that, on the day the victim was killed, he met another black male of about the same height and build as his own at a convenience store in the vicinity of the victim's home. The man was selling cleaning products door to door that day. The defendant also testified that he had met a second black male at a gasoline station bathroom shortly after he left the victim's home the second time. That man was slightly taller than the defendant and "had basically the same outfit on, except that the other man was wearing dark pants."[1]

The defendant contends that the admission in evidence of his earlier conviction of assault with intent to rape consti-

---

[1] During the presentation of the Commonwealth's case, there was testimony that, on the morning after the killing, the defendant gave the police a statement that was inconsistent with his testimony in many particulars.

tutes prejudicial error. Although it is a close question, we do not agree with the defendant. General Laws c. 233, § 21 (1992 ed.), provides, with exceptions not applicable here, that "[t]he conviction of a witness of a crime may be shown to affect his credibility." "Evidence of a prior conviction, especially of a violent crime or one involving dishonesty, is probative as to the defendant's credibility as a witness. See Advisory Committee Note to First Draft of Proposed Fed. R. Evid. 609(a), reprinted in 46 F.R.D. 161, 297 (1969) ('A demonstrated instance of willingness to engage in conduct in disregard of accepted patterns is translatable into willingness to give false testimony'). A reasonable basis exists, therefore, for the legislative determination that evidence that the defendant has been found guilty of a failure to conform his conduct to the legal norms of society should be brought to the jury's attention, as an aid in evaluating the defendant's sincerity and reliability as a witness." *Commonwealth* v. *Elliot,* 393 Mass. 824, 835 (1985) (Lynch, J., concurring). The court has recognized that "a defendant's earlier disregard for the law may suggest to the fact finder similar disregard for the courtroom oath." *Commonwealth* v. *Cordeiro,* 401 Mass. 843, 854-855 (1988), quoting *Commonwealth* v. *Fano,* 400 Mass. 296, 302-303 (1987). See *Commonwealth* v. *Roucoulet,* 22 Mass. App. Ct. 603, 608 (1986).

Nevertheless, the law of the Commonwealth is that judges have discretion in suitable cases to exclude evidence of prior convictions to impeach a defendant's credibility. That exercise of discretion is reviewable on appeal. *Commonwealth* v. *Maguire,* 392 Mass. 466, 469-470 (1984). The reason that a trial judge has such discretion is that "[t]he admission of evidence of a prior conviction, particularly a conviction of a crime not involving the defendant's truthfulness and one closely related to or identical to the crime with which the defendant is charged, may well divert the jury's attention from the question of the defendant's guilt to the question of the defendant's bad character." *Id.* at 469. "[T]here is the danger that, because a defendant appears to be a bad man capable of, and likely to commit, such a crime as that

charged, a jury might be led to dispense with proof beyond a reasonable doubt that he did actually commit the crime charged." *Commonwealth* v. *Stone*, 321 Mass. 471, 473 (1947).

"The question on appeal will normally be whether there was an abuse of discretion in admitting evidence of a prior conviction because the danger of unfair prejudice outweighed the probative value of the evidence of a prior conviction for the purposes of impeachment." *Commonwealth* v. *Maguire*, *supra* at 470. "An important factor, as enunciated in *Commonwealth* v. *Maguire*, 392 Mass. 466, 471 (1984), is the degree of similarity between the crimes of which a defendant had been convicted previously and the crime for which a defendant is being tried." *Commonwealth* v. *Andrews*, 403 Mass. 441, 456 (1988). *Commonwealth* v. *Cordeiro, supra* at 855. However, other factors, which we discuss below, are important too. "[W]e have never held that admission of a prior conviction [of a crime] substantially similar to that for which the defendant is on trial is per se error." *Commonwealth* v. *Reid*, 400 Mass. 534, 538 (1987).

The defendant was not charged in this case with rape or assault with intent to commit rape. The defendant was charged solely with murder in the first degree and the Commonwealth's case was predicated only on deliberate premeditation, not on a theory of felony-murder with sexual assault as the underlying felony. In a sense, then, the crime with which the defendant is now charged, and the crime of which he was previously convicted, are not substantially similar. The essential elements of the charged crime and the crime of which the defendant was convicted are different. On the other hand, there is force to the defendant's argument that the Commonwealth's version of the events resulting in the victim's death, as presented to the jury, was that the attack on the victim was, in substantial part, a sexual one. Indeed, in his closing argument, the prosecutor argued to the jury that the defendant's intention had been to sexually molest the victim. The thrust of the defendant's argument is that, by bringing to the jury's attention that the defendant had been

convicted of assault with intent to commit rape, the prosecutor, with the judge's permission, signalled to the jury that the defendant was the kind of man who was capable of and likely to commit a sexual assault such as occurred in this case and resulted in the death of the assault victim. Such a message would tend to cause a jury to dispense with proof beyond a reasonable doubt that the defendant committed the crime with which he was charged.

Despite the strength of the defendant's argument, we are unwilling to hold that the trial judge abused his discretion in admitting the record of prior conviction in evidence. As our recitation of the conflicting evidence suggests, the defendant's credibility was very much in question, and the prior conviction was relevant to credibility. Perhaps the balance of interests would have been different if several other records of prior convictions of dissimilar crimes had been available for impeachment purposes. If that had been the situation, the conviction in question would have contributed little to the Commonwealth's legitimate goal of impeachment while having the potential to lead the jury to dispense with proof beyond a reasonable doubt that he committed the crime with which he was charged. However, the record admitted here appears to have been the only available one and its exclusion would have deprived the Commonwealth of important impeachment evidence. Importantly, too, the prosecutor refrained from mentioning the prior conviction in his closing argument, and the trial judge gave the jury an appropriate limiting instruction when the evidence was admitted and again in his final instructions. See *Commonwealth* v. *Reid*, 400 Mass. 534, 540 (1987). We are satisfied that the judge did not err when he admitted in evidence the record of the defendant's conviction of assault with intent to rape.

We have reviewed the murder conviction pursuant to G. L. c. 278, § 33E (1992 ed.), and we are not persuaded that we should exercise our extraordinary power to order a new trial or reduce the verdict to a lesser degree of guilt. The defendant contends that it would be "more consonant with justice," see *Commonwealth* v. *Tavares*, 385 Mass. 140, 158, cert. de-

nied, 457 U.S. 1137 (1982), for this court to reduce his verdict to second degree murder because he was twenty-three years old at the time of the murder, he grew up in a ghetto, the evidence of premeditation was weak, and there was a lack of motive. The defendant further argues that the facts of the case — that he did not know the victim prior to the day of her death, that there was no apparent motive for him to kill her, that there was no evidence of robbery or attempted robbery, and that there was no evidence that the defendant had brought a murder weapon to the victim's home — point away from a calculated plan of murder towards an irrational, violent act by a disturbed young man. However, we do not view the evidence of premeditation as "weak." The evidence shows that, after removing the victim's clothing, the defendant wrapped stockings around her wrist and head and thrust a sharp instrument into her chest four separate times, puncturing her heart and left lung and fracturing a rib. Because the jury could have concluded that the defendant brutally murdered the seventy-six year old victim, who presented no conceivable physical threat to him, while the victim lay helpless on her bed, it is not "more consonant with justice" to reduce the defendant's sentence merely because he was twenty-three years old, grew up in a ghetto, and lacked any justification for the murder.

*Judgment affirmed.*