## COMMONWEALTH vs. CHRISTOPHER L. LITTLE.

Plymouth. January 6, 2009. - May 14, 2009.

Present: MARSHALL, C.J., IRELAND, SPINA, COWIN, CORDY, & BOTSFORD, JJ.

*Controlled Substances. Narcotic Drugs. Evidence,* Expert opinion, Prior conviction. *Practice, Criminal,* Motion in limine.

At the trial of a criminal complaint charging the defendant with possession of a Class D substance (marijuana) with the intent to distribute, the judge did not abuse his discretion in permitting a police detective to testify as an expert witness on the issue whether the facts of the case were consistent with an intent to distribute [768-770]; further, no substantial risk of a miscarriage of justice arose from the witness's imprecise economic explanation why a drug buyer would never purchase fifteen individual packages instead of a larger bulk package [770-771].

The evidence at the trial of a criminal complaint was sufficient to prove that the defendant possessed a Class D substance (marijuana) with the intent to distribute. [771-772]

At a criminal trial, the judge abused his discretion in ruling on a motion in limine that, if the defendant testified, the Commonwealth would be permitted to impeach the defendant's credibility by introducing in evidence the defendant's prior convictions, where the substantial similarity of the crimes underlying those convictions to the crime alleged in this case gave rise to a higher attendant risk that the defendant might improperly be convicted based on his reputation or his propensity to commit a crime; where the similarity of the crimes was the sole basis for admitting the convictions; and where the judge failed to balance carefully the convictions' probative value against their potential prejudicial impact; moreover, the judge's error, which effectively prevented the defendant from testifying, created a substantial risk of a miscarriage of justice requiring reversal of the conviction. [772-775] SPINA, J., dissenting.

COMPLAINT received and sworn to in the Brockton Division of the District Court Department on October 13, 2006.

The case was tried before *James F.X. Dinneen*, J.

The Supreme Judicial Court granted an application for direct appellate review.

*John J. Roemer*, Committee for Public Counsel Services, for the defendant.

*Christine M. Kiggen*, Assistant District Attorney, for the Commonwealth.

*David M. Siegel*, for Suffolk Lawyers for Justice, amicus curiae, submitted a brief.

CORDY, J. The Commonwealth brought a complaint against Christopher Little, the defendant, charging him with possession of a Class D substance (marijuana) with the intent to distribute. At trial, Little contested the charge only insofar as it alleged an intent to distribute. The Commonwealth called an experienced narcotics investigator, Detective Thomas Keating, who testified that in his opinion, the facts of Little's case were consistent with an intent to distribute. Little filed a motion for a required finding of not guilty, which the trial judge denied. The jury returned a verdict of guilty, and Little was sentenced to a term of two years' imprisonment. Little appealed, and we granted his application for direct appellate review.

Little, represented by new counsel, presses two arguments on appeal. First, he challenges Keating's testimony as an expert witness, including his qualifications as an expert, the scientific basis for his opinions, and the sufficiency of his testimony to prove that Little had an intent to distribute marijuana. Second, he challenges the judge's decision to deny Little's motion in limine to exclude his prior convictions of crimes involving drug distribution.[1]

We conclude that the judge did not abuse his discretion in allowing Detective Keating to testify, nor did he err in denying the motion for a required finding of not guilty. While Keating's testimony sometimes strayed beyond the bounds of his expertise, there was no objection to it, and its admission did not create a substantial risk of a miscarriage of justice. We also conclude, however, that the judge erred in denying Little's motion in limine, essentially ruling that if Little chose to testify, the Commonwealth would be allowed to introduce evidence of Little's prior convictions relating to drug distribution. Therefore, we reverse the conviction and remand for a new trial.

1. *Facts.* The jury could have found the following facts beyond

---

[1]Those prior convictions included possession with the intent to distribute a Class B substance (cocaine) in violation of G. L. c. 94C, § 32A (*c*); possession with the intent to distribute a Class D substance in violation of G. L. c. 94C, § 32C; distribution of a Class B substance in violation of G. L. c. 94C, § 32A (*a*); and conspiracy to violate the Controlled Substance Act in violation of G. L. c. 94C, § 40.

a reasonable doubt. *Commonwealth* v. *Latimore*, 378 Mass. 671, 677-678 (1979). On the evening of October 12, 2006, Officer Robert Stokinger of the Whitman police was parked on Route 14 when he saw a green sedan automobile with an expired inspection sticker drive by. He entered the vehicle's registration plate number into his computer and learned that the car had failed an inspection in December, 2005, and that the license of the vehicle's owner had been suspended. Stokinger pulled the vehicle over; Little was driving, and he was the only person inside the car. Stokinger asked Little for his driver's license and automobile registration and confirmed that the license had been suspended. He then called for backup and arrested Little.

At the Whitman police station, Little's pockets were emptied, and for the first time, Stokinger smelled a strong odor of marijuana. In the crotch of Little's pants, the officers found a plastic bag holding fifteen smaller plastic bags, each containing a green, leafy substance. They also found a cellular telephone and $254 in his pockets. The officers did not find any smoking paraphernalia in Little's possession.

2. *Discussion.* a. *Expert testimony.* "Otherwise qualified expert testimony is admissible if, 'in the judge's discretion, the subject [of such testimony] is not within the common knowledge or common experience' of the trier of fact, and the testimony will assist the trier of fact in determining a fact in issue or in understanding the evidence." *Commonwealth* v. *Miranda*, 441 Mass. 783, 792-793 (2004), quoting *Commonwealth* v. *Francis*, 390 Mass. 89, 98 (1983). That rule, however, is not rigid; and even in cases where the subject matter may be within the knowledge or common experience of the trier of fact, expert testimony will be admissible if, in the judge's discretion, it may be of assistance. See *Commonwealth* v. *Miranda*, *supra* at 793, citing P.J. Liacos, M.S. Brodin, & M. Avery, Massachusetts Evidence § 7.6.1 (7th ed. 1999). See generally Mass. G. Evid. § 702, at 204-213 (2008-2009).

It is well established that "trial judges have broad discretion to allow the use of narcotics investigators as experts in drug cases." *Commonwealth* v. *Miranda*, *supra*, citing *Commonwealth* v. *Johnson*, 413 Mass. 598, 604 (1992). The judge's decision to allow this type of evidence "will be reversed only where the

admission constitutes an abuse of discretion or error of law." *Commonwealth* v. *Johnson*, 410 Mass. 199, 202 (1991).[2]

Narcotics investigators may testify as experts to describe how drug transactions occur on the street. *Commonwealth* v. *Miranda, supra* at 794, quoting *Commonwealth* v. *Robinson*, 43 Mass. App. Ct. 257, 259 (1997) ("Characteristics of two-person street-level drug transactions are beyond the common store of knowledge of the average juror"). For example, this court and the Appeals Court have upheld decisions to allow testimony on the use of "lookouts" in drug transactions, *Commonwealth* v. *Miranda, supra* at 794-795 & n.13, and the significance of the purity of seized drugs, *Commonwealth* v. *Bienvenu*, 63 Mass. App. Ct. 632, 636 (2005).

We have also repeatedly held that there is no error in allowing "a police detective to testify that in his opinion the amount of [drugs] possessed by the defendant was not consistent with personal use but was consistent with an intent to distribute." *Commonwealth* v. *Johnson*, 410 Mass. at 202. See *Commonwealth* v. *Wilson*, 441 Mass. 390, 400-401 (2004) (*Wilson*); *Commonwealth* v. *Gollman*, 436 Mass. 111, 116 (2002) (*Gollman*). "An element of the Commonwealth's case in proving a charge of drug possession with intent to distribute is whether the subject drugs, connected to a given defendant, were for personal use or for distribution. This is not a matter within the common experience of jurors." *Commonwealth* v. *Grissett*, 66 Mass. App. Ct. 454, 457 (2006), citing *Wilson, supra* at 401.

In this case, as in *Gollman* and *Wilson*, the judge permitted Keating to opine as an expert witness whether the facts of the case were more consistent with distribution or personal use of drugs. Keating testified that he had been employed with the Brockton police department since 1987; that he had worked in the narcotics unit since 1994; that he had attended at least 200 hours of training in narcotics investigation; that he holds a master's degree in criminal justice; that he had been involved in close to

---

[2]At trial, Little did not challenge Detective Keating's qualifications as an expert. Little also failed to request a hearing pursuant to *Commonwealth* v. *Lanigan*, 419 Mass. 15, 24 (1994), to establish "the reliability of the theory or process underlying the expert's testimony." In this appeal, Little advances no argument based on the *Lanigan* case; therefore, we do not address the application of that case to narcotics investigators testifying as experts.

200 marijuana investigations; and that he had been involved in about fifty undercover purchases of marijuana. The judge did not abuse his discretion in permitting Keating to testify as an expert on the distribution issue, and Little lodged no objection to his doing so.[3]

Little also challenges the content of Keating's testimony. At no point during direct or cross-examination did Little object on the ground that Keating's testimony went beyond his area of expertise, or on the ground that he gave an opinion on the ultimate question before the jury. The conviction will therefore be reversed only if the testimony created a substantial risk of a miscarriage of justice. See *Commonwealth* v. *Daye*, 411 Mass. 719, 741-742 (1992); *Commonwealth* v. *Villanueva*, 47 Mass. App. Ct. 905, 907 (1999).

In *Wilson* and *Gollman*, we upheld convictions when experts offered testimony similar to Keating's. In *Wilson, supra* at 400-401, a narcotics detective opined that possession of one-half ounce of marijuana packaged in twenty smaller bags, $476 in cash, a pager, and a cellular telephone, and an absence of smoking paraphernalia, were more consistent with an intent to distribute than personal use. In *Gollman, supra*, a narcotics officer opined that possession of "crack" cocaine with street value of $540 and a pager, and an absence of smoking paraphernalia, were more consistent with an intent to distribute than personal use.

Keating's testimony fits squarely within the *Wilson* and *Gollman* framework. He began by testifying that drug dealers usually sell marijuana in "dime bags" (one gram, ten dollars), one-eighth of an ounce (3.5 grams, twenty-five dollars), one-half ounce (fourteen grams, seventy-five dollars), and one ounce (twenty-eight grams, $125 to $150). He testified that the absence of smoking paraphernalia could be significant in determining whether drugs are for personal use or for distribution. He admitted that "everybody carries a cell phone," but noted that drug dealers use them to communicate with potential buyers. The prosecutor then

---

[3]The judge did not make a specific finding that Keating was qualified to act as an expert witness. In the absence of a request by the defendant, however, a judge is not required to explicitly find that the officer is qualified to testify as an expert. See *Commonwealth* v. *Salcedo*, 405 Mass. 346, 350 (1989) ("It is evident from the transcript that the judge believed the . . . officer was qualified, and his allowing the testimony implies he made that finding").

asked, in the form of a hypothetical, for Keating to consider a case where a defendant is arrested with fifteen individually packaged bags of marijuana, $254 in loose currency, a cellular telephone, and no smoking paraphernalia. Keating testified that in his opinion, that situation was more consistent with distribution than personal use.

On cross-examination, Keating testified that he had "never dealt with a person buying marijuana in fifteen individual bags like that," but admitted that the purchaser could not control how the drugs were packaged. He acknowledged that the total weight of the marijuana alone was insufficient to infer an intent to distribute. He also offered an imprecise economic argument to explain why a drug buyer would never purchase fifteen individual packages instead of a larger bulk package. Finally, he testified that marijuana users usually (though not always) carry smoking paraphernalia with them.

As we have noted, expert witnesses must limit their opinions to "matters within the witness's field of expertise." *Commonwealth* v. *Pikul*, 400 Mass. 550, 554 (1987), quoting *Simon* v. *Solomon*, 385 Mass. 91, 105 (1982). See Mass. G. Evid. § 702, at 208. Keating's economic argument is likely beyond his expertise as a narcotics investigator, especially when he testified how theoretical buyers "would" behave; however, the defendant did not object to it. Keating had stated, "I never saw in my twenty year career or since October of [1994] a person buying fifteen . . . individual bags for personal use, they'll buy in bulk." That testimony appears to be within Keating's experience, and is more consistent with his qualifications as an expert. Evaluated in context, and in light of *Gollman* and *Wilson*, Keating's economic explanation did not create a substantial risk of a miscarriage of justice.

Finally, Little essentially argues that reversal is required because the evidence "was equally consistent with possession for personal use as with possession with the intent to distribute." *Wilson, supra* at 401. "We review the evidence in the light most favorable to the Commonwealth to determine whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " *Id.*, quoting *Commonwealth* v. *Latimore*, 378 Mass. 671, 677 (1979).

The Commonwealth's evidence was sufficient to prove the

elements of the crime. In *Wilson, supra* at 401-402, we stated:

> "A reasonable jury could have found that the Commonwealth met its burden by relying on the amount of marijuana the defendant possessed in the absence of any smoking paraphernalia, the manner in which the marijuana was packaged, the defendant's possession of $476 in cash, a pager, and a cellular telephone, and Detective Smith's testimony that the aforementioned facts are consistent with an intent to distribute."

The facts of this case are remarkably similar. Here, as in *Wilson*, a rational jury could have found the elements of the crime beyond a reasonable doubt. Therefore, the judge did not err in denying Little's motion for a required finding of not guilty.

b. *Prior convictions.* Little contends that the judge erred in ruling that if Little testified, the Commonwealth would be permitted to introduce in evidence Little's prior convictions of drug distribution to impeach his credibility. We agree.

"A judge has discretion to exclude evidence of a prior conviction, otherwise admissible to be used for impeachment under G. L. c. 233, § 21, if the danger of unfair prejudice resulting from such evidence outweighs its probative value." *Commonwealth* v. *Crouse*, 447 Mass. 558, 565 (2006), citing *Commonwealth* v. *Leftwich*, 430 Mass. 865, 869 (2000). "The judge must balance the danger of unfair prejudice which can result from the admission of evidence of prior convictions against the probative value of the evidence for the purpose of impeachment." *Commonwealth* v. *Fano*, 400 Mass. 296, 302 (1987), citing *Commonwealth* v. *Maguire*, 392 Mass. 466, 470 (1984). A careful balancing is essential because the "admission of evidence of a prior conviction, particularly a conviction of a crime not involving the defendant's truthfulness and one closely related to or identical to the crime with which the defendant is charged, may well divert the jury's attention from the question of the defendant's guilt to the question of the defendant's bad character." *Commonwealth* v. *Maguire, supra* at 469. See generally Mass. G. Evid. § 609, at 179-183.

We consider seasonably raised challenges to the admission of evidence of prior convictions under the abuse of discretion standard. *Commonwealth* v. *Fano, supra,* citing *Commonwealth* v.

*Maguire, supra* at 470. The defendant may challenge the judge's ruling even if he never testifies. *Commonwealth* v. *Crouse, supra* at 564 (declining to adopt holding of *Luce* v. *United States,* 469 U.S. 38 [1984]). However, "[i]t is well established that a motion in limine, seeking a pretrial evidentiary ruling, is insufficient to preserve appellate rights unless there is an objection at trial." *Commonwealth* v. *Whelton,* 428 Mass. 24, 25 (1998), citing *Commonwealth* v. *Keniston,* 423 Mass. 304, 308 (1996). "[B]ecause the defendant did not object at trial, we review the claim to determine whether there was a substantial risk of a miscarriage of justice." *Commonwealth* v. *Whelton, supra* at 26. See *Commonwealth* v. *Crouse, supra.* But see *Commonwealth* v. *Brown,* 451 Mass. 200, 210 (2008) (Botsford, J., dissenting) (concluding that objection preserved even though not renewed at trial).

In conducting a review for an abuse of discretion, we have analyzed several factors, including whether the prior conviction is substantially similar to the crime charged, *Commonwealth* v. *Drumgold,* 423 Mass. 230, 250 (1996); whether the prior conviction involves a crime implicating truthfulness, *Commonwealth* v. *Maguire, supra* at 469; whether there were other prior convictions that the Commonwealth could have used to impeach the defendant, *Commonwealth* v. *Whitman,* 416 Mass. 90, 95 (1993); and whether the judge conducted the required balancing test, *Commonwealth* v. *Paulding,* 438 Mass. 1, 12 (2002).[4]

We have repeatedly held that "no defendant should be convicted of a crime by proof of his reputation or propensity to commit similar crimes." *Commonwealth* v. *Fano,* 400 Mass. 296, 303 (1987), quoting *Commonwealth* v. *DiMarzo,* 364 Mass. 669, 681 (1974) (Hennessey, J., concurring). As a result, when deciding whether to admit evidence of a prior conviction, a paramount factor is whether the crimes have "substantial similarity." *Commonwealth* v. *Maguire, supra* at 471, and cases cited. Although substantial similarity alone does not create "per se error," *Commonwealth* v. *Whitman, supra* at 94, quoting *Commonwealth*

---

[4]We have also evaluated whether the judge provided limiting instructions to the jury and whether the prosecutor referred to the prior convictions in the closing argument. *Commonwealth* v. *Brown,* 451 Mass. 200, 211 (2008) (Botsford, J., dissenting), citing *Commonwealth* v. *Walker,* 401 Mass. 338, 346 (1987). These factors do not apply in this case. The prior convictions were never introduced at trial and, therefore, were not mentioned to the jury by either the judge or the prosecutor.

v. *Reid*, 400 Mass. 534, 538 (1987), it may be impossible to show an abuse of discretion otherwise. *Commonwealth* v. *Drumgold*, *supra*, quoting *Commonwealth* v. *Preston*, 27 Mass. App. Ct. 16, 23 (1989). See Mass. G. Evid. § 609, at 181-182.

In this case, the Commonwealth does not dispute that the crimes involved in the prior convictions are substantially similar to the ones at issue in the current charges. Little was charged with possession with the intent to distribute a Class D drug; if Little had testified, the Commonwealth intended to introduce evidence that he had been convicted of both distribution and possession with the intent to distribute controlled substances.[5] Because the underlying crimes are so similar, there is a higher attendant risk that Little might improperly be convicted based on his reputation or his propensity to commit a crime.

Additionally, "admission of evidence of prior convictions solely *because* of the similarity of the conviction to the crime being tried is reversible error" (emphasis in original). *Commonwealth* v. *Fano*, *supra* at 302 n.11, citing *Commonwealth* v. *Guilfoyle*, 396 Mass. 1003, 1004 (1985) (judgments reversed where judge considered "similarity of crimes to be the basis for admission of the records of conviction instead of a reason for excluding them"). In this case, the judge committed precisely that error. After hearing the attorneys' arguments on Little's motion in limine to exclude the prior convictions, he stated, "If the issue is did he have the intent to distribute, then these prior convictions become much more relevant." The judge appears to have conflated the analysis; because the sole issue was whether Little had an intent to distribute, admitting the prior convictions for drug distribution carried a high risk that the jury would convict Little because of his supposed propensity to commit that crime. The similarity of the crimes should have raised a "red flag." Instead, that factor was employed as a basis for admitting the convictions.

Finally, the judge gave short shrift to the required balancing of the convictions' probative value against their potential

---

[5]The defendant's prior conviction of conspiracy to violate the Controlled Substance Act was placed "on file." We express no view whether that conviction, which did not charge distribution, or possession with intent to distribute a controlled substance, might properly be used to impeach the defendant's credibility at a retrial, after the required balancing by the judge.

prejudicial impact. While the judge stated several times that he believed the convictions would be probative,[6] he made only one passing reference in his analysis of the possible prejudice: "I agree the prejudice increases." This falls short of the careful balancing that is required, especially because the judge was aware that his decision to deny Little's motion might make it "unwise, at best, for him to testify."[7]

The judge's error created a substantial risk of a miscarriage of justice. In this case, although the evidence is sufficient under the "rational trier of fact" test, *Commonwealth* v. *Latimore*, 378 Mass. 671, 677 (1979), it is far from overwhelming. Only two witnesses testified, both called by the Commonwealth. The expert witness, Keating, admitted that "everyone" carries cellular telephones; that drug purchasers have no control over the way drugs are packaged; that the weight of drugs in Little's possession was not sufficient to infer intent; and that not all marijuana users carry smoking paraphernalia. The judge's decision that he would admit the prior convictions effectively prevented Little from testifying. Because this case was a close one, Little's ability to testify in his own defense might have had a significant effect on the outcome of the trial.[8] The judge's decision effectively prevented him from doing so, thereby creating a substantial risk of a miscarriage of justice.

---

[6] "If the issue is did he have the intent to distribute, then these prior convictions become much more relevant. . . . And the fact that someone has two prior convictions for dealing in drugs, I think, is a substantial factor that goes to a person's credibility. Should a fact finder believe someone who has two prior drug convictions? . . . I think here [the convictions have] a substantial impact on the defendant's credibility with two prior drug convictions."

[7] The final two factors also inure to Little's benefit. The Commonwealth has not argued that these were Little's only prior convictions, and that the Commonwealth was therefore limited in its ability to impeach the defendant. Additionally, the prior convictions do not reflect "previous untruthfulness." *Commonwealth* v. *Maguire*, 392 Mass. 466, 469 (1984), quoting *Commonwealth* v. *Chase*, 372 Mass. 736, 750 (1977). Therefore, they are not particularly well suited for impeachment purposes.

[8] The dissent correctly points out that the defendant failed to make an offer of proof to show how his testimony would have aided his defense. *Post* at 778. While such a failure is not fatal in this case, it is a close question. Where the defendant chooses not to testify in the face of a ruling on the admissibility of his prior convictions, the failure to make such an offer properly may be construed against him on the questions of prejudice and substantial risk.

3. *Conclusion.* We reverse the judgment, set aside the jury verdict, and remand the case for a new trial.

*So ordered.*

SPINA, J. (dissenting). I agree that the judge below stated an impermissible reason in his ruling to admit the defendant's prior convictions, namely, that they were particularly probative of his credibility precisely because they were similar to the crimes charged in the complaint. *Ante* at 774. However, the judge's erroneous reasoning should not necessarily mean that his ruling was incorrect. An incorrectly reasoned ruling nevertheless may be correct for a different reason, and thus may be affirmed. See *Commonwealth* v. *Jones,* 403 Mass. 279, 289 (1988); *Commonwealth* v. *Reed,* 23 Mass. App. Ct. 294, 298 n.1 (1986). I believe that, notwithstanding the erroneous reasoning behind the judge's ruling to admit the defendant's prior convictions, his ruling was correct. Even if it was not correct, the defendant failed to show that it created a substantial risk of a miscarriage of justice. His conviction should be affirmed.

I agree that the court must go through a balancing of factors, and I agree that the prior convictions here are substantially similar to the crime charged, a factor which weighs heavily in the prejudice column. However, use of such convictions is not per se error, as the court acknowledges. *Ante* at 773, citing *Commonwealth* v. *Whitman,* 416 Mass. 90, 94 (1993).

I also agree that the defendant's prior convictions are not strong indicators of truthfulness, *ante* at 775 n.6, but every qualifying prior conviction, as here, has *some* probative value on the question of credibility, and the Legislature has so determined. See *Commonwealth* v. *Reed,* 397 Mass. 440, 446 (1986) (Lynch, J., dissenting), quoting Advisory Committee Note to First Draft of Proposed Fed. R. Evid. 609(a), reprinted in 46 F.R.D. 161, 297 (1969) ("A demonstrated instance of willingness to engage in conduct in disregard of accepted patterns is translatable into willingness to give false testimony"). This factor should be resolved in favor of the Commonwealth.

The court implies that the Commonwealth's failure in the

trial court to argue that these were the defendant's only prior convictions signifies that there were others by which the defendant could have been impeached. *Ante* at 775 n.6. See *Commonwealth* v. *Whitman, supra* at 95. It is not the Commonwealth's burden to show the existence of other convictions by which it could impeach the defendant. The burden is on the defendant to show the judge's ruling was erroneous and caused a substantial risk of a miscarriage of justice. The defendant never argued in his motion in limine that the Commonwealth had other convictions by which he could be impeached and therefore these similar convictions should be excluded. Nor did he argue that the Commonwealth should be limited, in the alternative, to merely one of the prior convictions in question. It was his burden to present all material favorable to him for the balancing process. Because the defendant has failed to show the existence of other available prior convictions, I would resolve this factor in favor of the Commonwealth.

The court also concludes that because the prior convictions never were introduced at trial, factors concerning the effect of limiting instructions and whether the prosecutor referred to the convictions in his closing argument are not applicable in this case. I disagree. As the court acknowledges, these are factors to be considered in the balancing process before a judge decides to admit prior convictions for impeachment purposes. They are factors that we also must consider when deciding if the judge's ruling was correct. "[W]e accept the basic premise that jurors can understand and will apply instructions that certain evidence is to be used by them for one purpose and not for another. Instructions concerning the jury's use of evidence of prior convictions are not more difficult to understand and apply than many other instructions." *Commonwealth* v. *Leno*, 374 Mass. 716, 719 (1978). We have said that a judge's instructions limiting the use of a defendant's prior convictions, both immediately after they are used and again in the general instructions, tend to lessen the possibility of unfair prejudice. *Commonwealth* v. *Walker*, 401 Mass. 338, 346 (1987). A judge is expected to do as much. See, e.g., *Commonwealth* v. *Leno, supra* at 718-719. Limiting instructions are a significant factor that weigh in favor of the Commonwealth.

We have noted that a prosecutor's decision to omit any reference to a defendant's prior convictions during closing argument

has a similar salutary effect. *Id.* A judge has discretion to order a prosecutor to refrain from any such reference in closing argument. We have every reason to expect that a defendant will request such instructions and orders in the face of a ruling permitting the use of prior convictions, and we have every reason to expect that a prudent judge would take such precautions, sua sponte, and give a standard instruction, even if his own reasons for admitting the convictions were faulty. This factor should be weighed in favor of the Commonwealth.

Two additional factors were not considered here, namely, that a judge may consider "the importance of the defendant's taking the stand, [and] the weight of the factor of the defendant's credibility in the decision of the issues of fact." *Commonwealth* v. *Diaz*, 383 Mass. 73, 81 (1981). "A judge can prepare himself for an early ruling by inquiring about the nature of the proof the parties intend to present, including what the defendant himself would offer if he took the stand; and an advance ruling may be made contingent on the evidence coming forward as thus indicated." *Id.* at 82. These factors should be considered, because a judge cannot intelligently assess whether to admit prior convictions without knowing what a defendant will say. The defendant has failed to make an offer of proof and show how his testimony was important to his defense. We may infer from the absence of an offer of proof that his testimony would not likely have aided his defense.

I believe the only factor that weighs in favor of the defendant in the balancing process is the similarity of his prior convictions to the crime charged. All others weigh in favor of the Commonwealth. The court acknowledges that the similarity between the prior convictions and the crime charged is but one factor in a balancing process, and although it is a significant factor, it alone is not enough to tip the balance. *Ante* at 773-774. See *Commonwealth* v. *Bly*, 444 Mass. 640, 654 (2005); *Commonwealth* v. *Whitman*, 416 Mass. 90, 94 (1993); *Commonwealth* v. *Fano*, 400 Mass. 296, 301-305 (1987); *Commonwealth* v. *Reid*, 400 Mass. 534, 538 (1987). There is every reason to believe that forceful limiting instructions and an order that the prosecutor make no reference to the prior convictions in closing argument adequately would have addressed any potential for unfair

prejudice and would have allowed the Commonwealth to have the benefit of otherwise useful evidence of credibility. See *Commonwealth* v. *Crouse*, 447 Mass. 558, 565 (2006); *Commonwealth* v. *Whitman*, *supra* at 93. In my view, the ruling permitting the use of this impeachment evidence is warranted by a proper application of the balancing analysis we have approved. I would conclude there was no error.

The court concludes that the judge's ruling was error because his reasoning for admitting the prior convictions was erroneous. *Ante* at 774. This analysis proceeds from reasoning used in other cases, see *Commonwealth* v. *Fano*, *supra* at 302 n.11, and cases cited, which I believe is faulty. The appeal is from the ruling, not the reasoning. The judge's reasoning in these circumstances is not determinative; it is the correctness of the ruling to which we should look. For example, if a judge's reasons for admitting a document or a photograph are faulty, we look to see whether there was some valid reason that would have supported the ruling. If such a reason exists, the ruling will be affirmed. See *Commonwealth* v. *Jones*, 403 Mass. 279, 289 (1988); *Commonwealth* v. *Reed*, 23 Mass. App. Ct. 294, 298 n.1 (1986). In no other area do we confine our inquiry to the judge's reasoning. There is no reason to believe the judge would have informed the jury of his reasoning. There is no reason to believe the judge would not have given a standard instruction and correctly charged the jury on the proper use of prior convictions for impeachment. The judge's thought process does not determine the correctness of his ruling.

At the end of the discussion of the balancing process the court states that " 'admission of evidence of prior convictions solely *because* of the similarity of the conviction to the crime being tried is reversible error' (emphasis in original)." *Ante* at 774, quoting *Commonwealth* v. *Fano*, *supra* at 302 n.11. This sounds like per se error. If indeed our jurisprudence were so clear, there would have been no need to go through the balancing process undertaken by the court. The cases cited in *Commonwealth* v. *Fano*, *supra*, follow the same pattern. If the use of similar convictions constitutes reversible error, as the court concludes, then there was no need to discuss the judge's erroneous reasoning in *Commonwealth* v. *Guilfoyle*, 396 Mass. 1003 (1985), there was no need to discuss the judge's erroneous reasoning or to apply

the balancing process in *Commonwealth* v. *Roucoulet*, 22 Mass. App. Ct. 603, 608-610 (1986), and there was no need to apply the balancing process in *Commonwealth* v. *Fano*, *supra.* The language in the *Fano* case on which the court relies conflicts with a more recent holding that it is not per se error to impeach with substantially similar convictions, and that a balancing process must be used. *Commonwealth* v. *Whitman*, *supra* at 94.

Even if the judge's ruling were erroneous, the defendant has failed to show that it has caused a substantial risk of a miscarriage of justice. In *Commonwealth* v. *Crouse*, *supra* at 564, 565, we held that a defendant who does not testify may challenge, on appeal, a decision by a trial judge to allow impeachment by use of prior convictions. We never suggested, however, that the rule we adopted in the *Crouse* case would relieve a defendant of his burden to create an adequate record for appellate review, such as making an offer of proof as to the substance of his proffered testimony. The record on appeal is silent regarding the defendant's proffered testimony, including his explanation for keeping fifteen small baggies of marijuana in the crotch of his pants, or how he happened to have $254 in his pockets, predictably obvious questions that would have arisen on cross-examination. A defendant cannot improve his position by not testifying, as compared to a defendant who testifies and thereby creates a record by which an appellate court may consider the significance of his testimony as a factor in the balancing process. See *Commonwealth* v. *Chase*, 372 Mass. 736, 749 (1977).

The decision not to testify in response to a ruling that admits similar prior convictions for impeachment does not implicate any constitutional right. See *id.* at 751 (this approach "has not commended itself as raising a valid due process challenge"). See also *Commonwealth* v. *Crouse*, *supra* at 566 n.7, and cases cited. The defendant's failure to make an adequate record from which we properly may decide whether there has been a substantial risk of a miscarriage of justice leads to the inescapable conclusion that he has failed to satisfy his burden.

The court suggests that the "decision [to] admit the prior convictions effectively prevented [the defendant] from testifying." *Ante* at 775. This is a finding of fact for which there is no record support. It also ignores the result in cases where a defendant did

testify and was impeached by prior convictions that were substantially similar to the crimes charged, and the judgment of conviction was reversed. See, e.g., *Commonwealth* v. *Roucoulet, supra* at 608. Moreover, there is nothing in the record that reveals the number of times testifying defendants have been acquitted, notwithstanding impeachment by convictions similar to the crime charged. Today's decision encourages defendants to refrain from testifying and from making an offer of proof. It also bodes poorly for the Commonwealth in cases where Commonwealth witnesses may be impeached with prior convictions, but the defendant might not be impeachable if the convictions are for similar offenses, a situation that distorts the fact-finding process.

Although the Commonwealth's case is not overwhelming, I do not believe this case is as close as the court suggests. *Ante* at 775. The defendant had fifteen packets of marijuana secreted in the crotch of his pants, and he had $254 in his pockets. Unlike the defendant in *Commonwealth* v. *Roucoulet, supra* at 609, who had but a single marijuana cigarette, the defendant's prior convictions here do not create the unfair prejudice by overkill that was presented in that case.

I do not believe there was error, and I do not believe the defendant has shown a substantial risk of a miscarriage of justice. I respectfully dissent.