The defendant, Jose Liriano-Vasquez, was convicted in 2016 of one count of possession of a class A substance (heroin) and one count of possession of a class B substance (cocaine) with intent to distribute. He was found not guilty of possession of ammunition without a firearm identification (FID) card. He presents three arguments on appeal: first, that because he does not speak English and was interrogated without an interpreter present, his statements were involuntary and his post-Miranda admissions should have been suppressed; second, that the humane practice instruction was flawed; and third, that the opinion of an expert witness of the Commonwealth regarding the defendant's intent to distribute should have been excluded. We affirm.
Background. The evidence at trial established the following. In June, 2015, members of the Berkshire County drug task force executed a search warrant at the third floor apartment of 16 Harvard Street in Pittsfield. Upon their arrival, the police knocked and announced their presence. After repeatedly knocking and announcing "police, search warrant," the officers heard a man say "hold on, hold on" from behind the door. The police waited thirty seconds for any action by the occupants before entering the apartment by force. Upon entry they found the defendant by the front door and found his girl friend in the bathroom located within the adjoining bedroom. No one else was found in the apartment.
The police handcuffed the defendant and his girl friend, and read the Miranda warnings to both from a printed card. The defendant initially received the warnings in English, but informed the officer that he did not understand them.[2] The officer then read to him his Miranda rights in Spanish, which was printed on the back of the same card. The officer, who did not speak Spanish, asked the defendant "Entiende?" which means "understood" in Spanish, and the defendant affirmatively nodded his head.
When an officer went over the terms of the search warrant with the defendant in English, the defendant was nodding in affirmation. Additionally, during subsequent questioning the defendant's responses were in English. The officer asked the defendant whether he lived there, and he responded affirmatively in English.[3] The officer asked whether there were any drugs in the apartment, and the defendant initially gave a denial, answering "no" in English. However, when the officer later confronted the defendant with drugs found in the apartment, and asked who the drugs belonged to, the defendant stated "me." The police also found a shoebox with the defendant's personal documents, including paystubs and bank records, and other incriminating evidence.[4]
At trial, the defendant did not object to the admission of his post-Miranda statements, but instead raised the issue of voluntariness to the judge and requested that the judge provide a "quasi-humane practice" instruction[5] to the jury.[6] The judge's humane practice instruction failed to include language stating that voluntariness was a determination to be made individually by each member of the jury. He was sentenced to a year of incarceration for his two convictions. This appeal was timely filed.
Discussion. The defendant contends first that the judge violated his constitutional rights by not conducting a voir dire prior to concluding that his statements to the police were admissible. He further argues that his admissions should have been excluded because he was questioned without the benefit of a Spanish speaking interpreter. Second, the defendant argues that the judge's error in his humane practice instruction to the jury created a substantial risk of a miscarriage of justice. Third, the defendant argues that the judge should have excluded the opinion of the Commonwealth's expert. We address each claim in turn.
a. Voluntariness of admissions. Because the defendant did not file a motion in limine or object at trial, we review this claim only to determine whether the error presents a substantial risk of a miscarriage of justice.[7] Police are required to recite Miranda warnings "in a language, and in a manner, an unlettered and unlearned defendant can understand" (citation omitted). Commonwealth v. Siny Van Tran, 460 Mass. 535, 558 (2011). A judge must conduct a voir dire "only where there is evidence of a substantial claim of involuntariness, ... and where voluntariness is a live issue at the trial" (citation omitted). Commonwealth v. Conkey, 443 Mass. 60, 77 (2004). Whether a statement was voluntary is determined by the totality of the circumstances. Commonwealth v. Silanskas, 433 Mass. 678, 685-688 (2001).
While the defendant presses the fact that the police officer reading the Spanish Miranda card did not speak Spanish, the record evidence indicates that the warnings given were appropriate, that the defendant understood those warnings, and that the statements thereafter were voluntary. Once the officer had finished reading the printed card in Spanish, he asked, in Spanish, whether the defendant understood. The defendant indicated that he did. The defendant makes no claim that the warnings he received were flawed, nor does he allege that his rights were mischaracterized in the Miranda warnings. Compare Commonwealth v. Vuthy Seng, 436 Mass. 537, 544 (2002). The defendant does not provide any authority for the proposition that the individual reading a translated Miranda card must be a fluent speaker of the translated language.
Likewise, the fact that the judge did not conduct a voir dire regarding the admissions given by the defendant in English was not error. Here, exchanges in English between the police officers and the defendant occurred throughout. When the officers knocked on the door of the apartment with a warrant in hand, a male voice with a "dialect" answered "hold on, hold on."[8] When the officer asked the defendant to whom did the drugs found on the scene belong, he put his head down and responded "me". Because that question was posed immediately after the defendant and his girl friend, handcuffed, watched the police discover hidden drugs in the apartment, its import would have been clear. In fact, both of the defendant's admissions were prompted by rather simple questions.[9] As such, we conclude that the judge did not err by not conducting a voir dire for the defendant's admissions.
b. Humane practice instruction. The Commonwealth concedes that the humane practice instruction as given failed to inform each individual juror to determine for themselves whether the defendant's statement was voluntary. Because trial counsel did not object to the instruction, we again review to determine whether any error created a substantial risk of a miscarriage of justice. "[A] substantial risk of a miscarriage of justice refers to a risk that has some genuine substance to it. That standard does not encompass an abstract, theoretical possibility of a miscarriage of justice, utterly divorced from the case as it was tried." Commonwealth v. Russell, 439 Mass. 340, 351 (2003).
Here, we are not persuaded that the judge's omission rises to the level of a risk of a miscarriage of justice, especially in light of the forcefulness of the remainder of the humane practice instruction. The judge took pains to underscore that the Commonwealth carries the burden of proving the voluntariness of the defendant's statements beyond a reasonable doubt, and that the defendant must be shown to have made those statements voluntarily, freely, and rationally. Given the strength of the evidence against the defendant, even assuming error, it did not impact the jury's deliberation, and therefore there was no substantial risk of a miscarriage of justice.
c. Expert witness. Finally, the defendant claims that Trooper Gero, an expert drug witness for the Commonwealth, impermissibly shared his opinion regarding whether the defendant had an intent to sell the drugs in his possession. On direct examination Trooper Gero was asked whether the evidence seized from the apartment was consistent with personal use or an intent to sell. Trooper Gero answered that it was consistent "with intent to sell," and pointed to the presence of a scale, cutting agents, lidocaine, packaging materials, ledgers, and hidden spaces found in the apartment to support his opinion.
There was nothing impermissible about Trooper Gero's testimony. Our cases hold that a determination of whether drugs are intended for personal use or distribution is outside a juror's common experience. Commonwealth v. Grissett, 66 Mass. App. Ct. 454, 457 (2006). "We have also repeatedly held that there is no error in allowing 'a police detective to testify that in his opinion the amount of [drugs] possessed by the defendant was not consistent with personal use but was consistent with an intent to distribute.' " Commonwealth v. Little, 453 Mass. 766, 769 (2009), quoting Commonwealth v. Johnson, 410 Mass. 199, 202 (1991).
Judgments affirmed.

The defendant specifically told the officer that he did not understand the warnings, not that he could not understand the English language. It is unclear on the record which language the defendant used to do so.

The police officer first stated: "I asked him if he lived there. He stated that, yes, he did." When asked about the defendant's response, he said, "I don't remember his exact words but I know that it was an affirmative response, and he did say that he lived there." The officer confirmed the exchange occurred in English.

This evidence included but was not limited to: a WD-40 can with a false bottom, a Red Bull can with a false bottom, a false dictionary with a safe containing $145, a bag of lidocaine, "hundreds" of small black rubber bands, concealed voids under the stove and the bathroom tiling, a digital scale with white powder, ziploc baggies, and unused ziploc baggies stuffed in a men's shoe. Under the microwave, the police found a logbook with various entries, including "Chapo" with "$ 7,500," "R" with "$ 1,500," and the name "Tio." There was a digital scale with white powder residue, later found to be cocaine. In a cabinet, a bag of cocaine and a small bag with heroin residue were found inside a box of pasta. The police also found .22 caliber ammunition in the attic.

A "humane practice" instruction instructs the jury that any statement by the defendant must be given voluntarily, freely, and rationally, proven beyond a reasonable doubt. See Commonwealth v. Tavares, 385 Mass. 140, 149-153 (1982).

The Court : "Is there any other motions you have?"
Counsel : "No, your Honor. But I will have, depending on the evidence, there will be a confession in the main practice issue here, which I want to bring to your Honor's attention."
The Court : "Okay."
Counsel : "Essentially my client speaks Spanish. He was read the Miranda warnings in Spanish. He acknowledges he understood them. The question later is, they're going to say he admitted to certain things."
The Court : "Okay."
Counsel : "He didn't understand the question fully, the gestures and the language. He understood part of it, not all of it."
The Court : "Okay."
Counsel : "So essentially that is -- is a quasi-humane practice issue when there's no translator there and he doesn't understand the question but there's a -- they're trying to submit it as a full admission."
The Court : "Well, you're certainly entitled to proceed under the 'humane practice' and I will instruct the jury accordingly under the 'humane practice.' Is there any evidentiary issue that I should be aware of?
Counsel : "No, your Honor, just essentially 'humane practice' is slightly different and it's usually fall -- seems to fall under coercion or something like that -- involuntariness. Here the argument simply will be it wasn't voluntary if he didn't understand it."
The Court : "But it all goes to the same thing, he -- he was not put in the position to understand and ably answer the question, so it all comes under that and you're certainly entitled to argue, if there's evidence, that he didn't understand what the question -- and that's why he answered it the way he did."
Counsel : "That's correct."
The Court : "The -- I will give a 'humane practice' instruction as well."

The defendant's request for a "quasi-humane practice" instruction was not a motion in limine, which is the only way the absence of an objection at trial could have been circumvented. See Commonwealth v. Grady, 474 Mass. 715, 719 (2016) ("We will no longer require a defendant to object to the admission of evidence at trial where he or she has already sought to preclude the very same evidence at the motion in limine stage, and the motion was heard and denied").

The defendant was directly behind the door when the police entered, and was the only male found in the apartment.

Regarding the defendant's admission that he lived at the apartment, the officer "asked him if he lived there." Regarding the defendant's admission that the drugs were his, he was asked "the drugs yours or hers?"